**ERIC HOOTEN**

U.S.M. No. 14881-014

FILED

Dated: *May 27, 2005*

2005 JUN 22  A 8: 33

JUN - 7 2005

U.S. DISTRICT COURT
BRIDGEPORT CONN.

**OFFICE OF THE CLERK**

United States District Court
District of Connecticut
915 Lafayette Blvd.
Bridgeport, Connecticut 06604

Re: Eric Hooten, Petitioner vs. U.S.A., Respondent Former U.S.
District Court No. 3:02 CR 00278 Before the Hon. Janet C. Hall
U.S. Judge

---

On the *23rd of March*, 2005, this Court issued an order direct-
ing Petitioner to amend his pleading pursuant to 28 U.S.C. §2255.
Accordingly, Petitioner is requesting that this Court add the
two following issues to his pending §2255 motion.  Allowing
this amendment will in no way prejudice the respondent(s) and
will instead conserve judicial resources rather than filing
a successive petition.

Please be kind and docket the motion with a filing number
and notify the Petitioner immediately after having done so.
Thank you in advance for your prompt attention to this matter.

nps
EH/Files

Respectfully Submitted,

*Eric Hooten*

Eric Hooten
Petitioner (pro se)

## STATEMENT OF THE CASE

On October 3, 2002. a Federal Grand Jury allegedly returned a Six Count Criminal Indictment against the instant petitioner Eric Hooten, and two other individuals pursuant to violating 21 U.S.C. § 841(a)(1), (Possession With intent to Distribute Heroin) and 18 U.S.C. § 2, (Aiding and Abetting), 21 U.S.C. § 846, (Conspiracy to Distribute 100 Grams or more of Heroin) and 21 U.S.C. § 853 (Criminal Forfeiture) all under Criminal Docket No. 3:02 CR 000278 (JCH).

On October 10, 2002. the petitioner Eric Hooten, was arrested by the (DEA) , i.e. Drug Enforcement Administration pursuant to a Federal Arrest Warrant.

Pursuant to Count Five of the Federal Criminal Indictment charges the petitioner Eric Hooten, with possession with intent to distribute 100 grams or more of heroin a Schedule I Controlled Substance, relatingto an offense on September 24, 2002. where a laboratory analysis revealed a net weight of 98.9 grams.

On October 15, 2002. petitioner was appointed an attorney, William H. Paetzold, Esq. by the court pursuant to (CJA).

On October 23, 2002. the petitioner Eric Hooten, was held detained based upon the Federal Criminal charges alleged in the Indictment signed by Magistrate Judge Thomas P. Smith.

On October 29, 2002. an arraignment hearing was held as to Eric Hooten, and a plea of NOT GUILTY was entered as to all Counts alleged in a Six Count Indictment the court accepted the plea and set a Jury selection date of (12/2/02) at 9:00 a.m.

(2)

On February 12, 2003. the petitioner Eric Hooten, entered a change of plea of GUILTY as to Count Five of the charging Federal Criminal Indictment after a plea of not guilty of all counts alleged in the indictment, this plea was accepted by the court's Honorable Janet C. Hall, United States District Judge.

On May 1, 2003. a Sentencing Hearing was held as to Eric Hooten, as to Count Five of the indictment, and the Government made an Oral Motion to Dismiss Count One (Conspiracy) of the indictment against Eric Hooten, to Distribute 100 grams or more of heroin .

Petitioner Eric Hooten, did receive a sentence of 151 months of imprisonment and 3 years of supervised release and a special assessment fee of $100. for sentencing as to Count Five.

STATEMENT OF THE FACTS

In July of 2002. an unknown exact date members of the (DEA), i.e.
Drug Enforcement Administration and their (MET), i.e. Mobile Enforcement Team
received information from the (HPD), i.e. Hartford Police Department, initiating
an investigation of Narcotics Trafficking taking place at the CBL Market, which
is located in Hartford , Connecticut.

On July 29, 2002. a Special agent with the (DEA), debriefed a (CS), i.e.
Cooperating Source who provided information that another (CS), with the (DEA),
went to the CBL Market and met with a Cesar Batista, who informed both of the
(DEA's), (CS), that he could provide them with whatever amount of heroion they were
looking to purchase, and also stated that he could provide them with 10 to 20 grams
as a sample.

On July 30, 2002. (CS 1) was provided with $800. to make a purchase of 10
grams of heroin from Cesar Batista, at the CBL Market located in Hartford ,
Connecticut. , both (CS) were observed by the (DEA) agents and members of the
Hartford Police Department driving to and stopping in fron of the CBL Market.
(CS 1) was led to Cesar Batista, by an unknown male who was standing in front of
CBL Market, this male was later identified by the police as Pedro Pulas, who was
instructed to give 10 grams of heroin to (CS 1) by Cesar Batista, the (CS 1) did
weigh the heroin on a digital scale observing that the heroin weighed approximately
eleven grams, the (CS 1) then gave the $800. to Cesar Batista, and (CS 1) and (CS 2)
left CBL Market and met with the (DEA) agents. During debriefing of (CS 1) by the
(DEA) agents (CS 1) stated that at the time of the transaction did observe Batista,
possessing a gray colored handgun located in his waistband of his pants .
Laboratory analysis revealed a net weight of 9.9 grams.

On August 1, 2002. the (DEA) and (MET) agents met with (CS 1) and (CS 2) and directed (CS 2) to make a recorded telephone call to Cesar Batista, at (860) 247 - 4135 (is the telephone number to CBL Market). Batista, answered the call. During the conversation, (CS 2) mentioned the 10 gram purchase of July 30, 2002. and also told Batista, that he wanted to purchase 50, fifty grams of heroin. Batista, told (CS 2) to come to the store and talk. (CS 1) was provided with $4,000. to make the purchase from Batista. (CS 2) was provided with a transmitter so that the conversations could be recorded.

Upon arriving at the store, the (CS) asked Batista, if he was ready to make the sale. Batista, stated that he was still waiting for the heroin and that they should come back in approximately one hour. Approximately one hour later, the (CS) drove back to the CBL Market and met with Batista, in the rear of the store. Batista, stated that he did want to sell the heroin inside the store because he owned the store and had credit cards and a pistol permit that he was risking by dealing the heroin. (CS 1) then provided Batista, with $4,000. .

(CS 1) and (CS 2) and Batista, then exited the store. (CS 1) went to an undercover vehicle, with (CS 2) and Batista, entered a Tan Nissan Maxima, registered to Batista . At that time (CS 2) and Batista, drove around the block to Main Street. (CS 1) followed the Maxima, once on Main Street, Batista, stopped the vehicle, and activated a switch that opened a hidden compartment located in the dashboard on the passenger's side, just above the glove compartment. (CS 2) observed that the hidden compartment contained several bags. Batista, directed (CS 2) to take a black colored bag. Batista, then closed the hidden compartment and (CS 2) exited the vehicle, joining (CS 1) and both driving from the area. Both (CS) then met with (DEA) agents and relinquished the black bag, which contained heroin. Laboratory analysis revealed a net weight of 49.5 grams.

(5)

On August 14, 2002. at the direction of the (DEA) agents, (CS 2) placed a recorede telephone call to Cesar Batista, and made arrangements to purchase 50, fifty grams of heroin on the following day. Batista, agreed to meet (CS 2) the next day.

On August 15, 2002. law enforcement officials provided (CS 2) with $4,000. to make the purchase of the 50, fifty grams of heroin. (CS 1) and (CS 2) then drove to the CBL Market and met with Cesar Batista, in a rear room of the store. Also in that room was an unidentified black male, who had offered to provide Batista, with a sample of heroin to give to (CS). (CS 2) declined the offer and the unidentified black male left the store. At that time, Batista, told the (CS), that the male's heroin was no good. (CS 2) then showed Batista, the $4,000. to purchase the 50 grams of heroin, Batista, then sent an unknown Puerto Rican male out to the Nissan Maxima to get the heroin. A few minutes later, the Puerto Rican male re-entered the store, and reported to Batista, that he did not see any police activity out on the street and then handed the heroin to (CS 1).

(CS 1) and (CS 2) then left CBL Market and met with (DEA) agents at a pre - determined location. At that time, (CS 1) relinquished a torn, black, plastic bag which containe the purchased heroin. Laboratory analysis revealed a net weight of 49.7 grams .

On August 27, 2002 (CS 1) and (CS 2) were directed by the (DEA) agents to drive to the CBL Market to determine the whereabouts of Cesar Batista. Upon arriving at the store, they met with the Puerto Rican male, who was later identified as Julio Pagan. Pagan, told the (CS) that Batista, was in the Dominican Republic, having gone there with his brother. (CS 1) and (CS 2) inquired to Pagan, about purchasing 100 grams of heroin . Pagan, told them that he would have to make some calls in order to determine what price he could sell the heroin for .

(6)

On August 29, 2002. at the direction of the (DEA) agents CS 1) and (CS 2) returned to the CBL Market and met with Pagan, in order to purchase 60, sixty grams of heroin. Upon meeting with Pagan,, Pagan told them that his source of supply was away.but would be returning later. The (CS) left without making a purchase.

On September 4, 2002. the (CS) placed a telephone call to Pagan, in attempt to purchase 60, sixty grams of heroin. Upon making telephone contact, Pagan, told (CS 1) that he did have sixty grams of heroin set aside for them and that they could come to the store at any time to pick it up. At that time (CS 2) was provided with $4,800. a recorder and transmitter to record the meeting with Pagan. The (CS) drove to the CBL Market and found neither Pagan, or Batista, at the store. (CS 1) telephoned Pagan, who stated that he would be there in approximately five minutes. After waiting just a short time, Pagan, arrived. The (CS) went with him into an office area inside the store. Pagan, was carrying a green plastic bag and placed it in a garbage can beofre walking into the store area where he directed an unknown Hispanic male to watch the front of the store. He then returned to the office area and closed the door. At that time Pagan, retrieved the bag from the garbage can and weighed it on a digital scale. The (CS) observed the bag weighing 72 grams. The (CS) only wanted to purchase 60, sixty grams, Pagan, removed approximately nine grams from the bag and gave the remaining larger amount to (CS 2) . At that time (CS 2) paid Pagan, $4,800. and then left the store with (CS 1) and met with the (DEA) agents, relinquishing the purchased heroin to the agents. Laboratory analysis revealed a net weight of 61.0 grams .

On September 23, 2002. (DEA) agents provided the (CS) with a transmitter and $8,000. to make a purchase of 100, one hundred grams from Pagan, and Batista, . A prior telephone call between the (CS) and Pagan, arranged this 100 gram purchase. The (CS) drove to CBL Market and upon arriving, they observed that a (HPD) cruiser

was parked in front of the stroe. The (CS) met with Pagan, and Batista, who advised the (CS) that they did not want to conduct the heroin transaction until the police left the area.  Pagan, told the (CS) that the heroin was in an apartment near Sigourney Street in Hartford, Connecticut.  Pagan, also told them that the cost of the heroin would be $75. per gram.

On September 24, 2002. (CS) was directed by the (DEA) agents to make a telephone call to Pagan, in regards to a 100, one hundred gram purchase to be made. Upon making the call, an individual later identified as  Eric  Hooten, answered the telephone call and told (CS 2) that Pagan, no longer had the phone, but that if the (CS) wanted to make the purchase, the (CS) should come to the CBL Market.

The (DEA) agents provided (CS 1) with a recorder and transmitter, beofre going to the CBL Market to determine if Pagan, or Batista, were at the store and if they had the 100, one hundred grams of heroin.  (CS 1) drove to the store and met with Pagan, and Eric Hooten,  Hooten, told (CS 1) that he would get them the heroin, and began to walk over to a Tan Chevy Blazer.  (CS 1) then told Hooten, not to get the heroin because the money was not with them.  (CS 1) left the store to get the money from the (DEA) agents who did provide the $8,000. for the purchase of heroin.  (CS) then drove back to the CBL Market and met with Pagan, who was outside of the store. Pagan, explained to the (CS) that he and Batista, had a failing out and Batista, had given the business of selling the heroin over to Hooten.  At that time, the (CS) went into the store and met with Batista, and Hooten, at that time Batista, directed Hooten, to charge (CS) $75. per gram.  (CS 1) handed Hooten, $7,500.  The (CS 1) observed Hooten, go to the counter area in the store and get the heroin, which he gave to (CS 2).  The (CS) left the store and met with the (DEA) agents.  Laboratory analysis revealed a net weight of 98.9 grams.

(8)

On October 10, 2002. at approximately 1:20 p.m.  Eric  Hooten, was observed by special agents with the (DEA) operating a Black Saab, in the area of 63 Norwich Street in Hartford, Connecticut. He was followed to an area of Otis Street and Campfield Street, where his motor vehicle was stopped and he was at that time taken into custody and arrested pursuant to a federal arrest warrant .

## I.    LEGAL STANDARDS AND DISCUSSIONS

On a Motion to Vacate, Set aside, or Correct a Sentence pursuant to **28 U.S.C. § 2255.** The Petitioner Eric Hooten, in this instant case bears the burden of proving his grounds for collateral attack by less than proof by a preponderance of the evidence. See : **Irizarry v. United States,** 508 F.2d 960 (1974). , **United States v. Ready,** 82 F.3d 551 (2nd Cir. 1996). , **Hill v. Lockhart,** 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

i). The District Court accepted his guilty plea in violation of Rule 11, Fed. R. Crim. Proc. Where the charge was never even fully identified in the trial court's on the record questioning of the defendant to determine his understanding of the charge.

ii). Circumstances surrounding plea did not clearly demonstrate defendant understood waiver to encompass an illegal restitution penalty. Where defendant pleaded guilty to wire fraud.

iii). The Supreme Court of the United States has stated that on habeas corpus following a guilty plea, a petitioner alleging an involuntary plea, inter alia, because of ineffective assistance of counsel, petitioner, must allege that, had his counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial.

**28 U.S.C. § 2255 Provides that :**

> A prisoner in custody under a
> sentence of a court established
> by an Act of Congress .... may
> move the court which imposed the
> sentence to vacate, set aside or
> correct the sentence . Unless
> the motion and files and records
> of the case conclusively shows
> that the prisoner is entitled to
> no relief. The court shall notice
> thereof to be served upon the
> United States Attorney, and grant
> a prompt hearing thereon, determ-
> ine the issues and make findings
> of fact and conclusion of law with
> respect thereto .

**Pursuant to 28 U.S.C. § 2255.** where a petitioner, presents issues following a plea of guilt, judgment and sentence that his plea was involuntarily rendered due to counsel's advice and his undervalued the merits of a potential defense especially surrounding the charging federal criminal indictment alleging conspiracy and the amounts alleged against the petitioner, highly questionable, but, instead his counsel provided ineffective assistance and pressured the petitioner into pleading guilty, had it not been for his counsel undervauling the merits of a potential defense, the petitioner, would have gone to trial.

Here in this instant case the petitioner, claims that his defense attorney provided Constitutionally deficient assistance during the plea phase, **inter alia,** violates the Sixth Amendment of the United States Constitution. Where defense counsel pressured the petitioner, into changing his initial plea of **not guilty, to** a plea of **guilty,** because of defense counsel **undervaluing** the merits that clearly existed for a highly potential defense against the charging federal indictment relating to a **drug related conspiracy,** alleging amounts of drugs which was highly questionable and confusing during the plea phase, that could not have been found against the instant petitioner, inter alia.

It is also very clear upon the records that the plea hearing was very confusing, and that the petitioner, could not have understood the nature of all of the charges alleged in the federal indictment, and for that matter, the nature of the plea hearing proceedings.

Reviewing the **plea colloquy hearing** records will show that the entire proceedings **were confusing** not only to the petitioner, but also the court, who made admissions upon the records, thus, serving as proof that the petitioner's, plea of guilt could not have been a **knowning , voluntary, intelligent rendering,** it was only done because of the advice and pressure of defense counsel.

Defense counsel's, representation was clearly objectively unreasonable, and prejudicial because of counsel's deficient performance, because the petitioner's initial change of plea was illadvised by defense counsel, involuntarily rendered and relief should be granted.

See : Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). (quotation omitted); ( Because a guilty plea is an admission of all the elements of a formal criminal charge, it can not be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts).

Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). ( Where a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range competence demanded of attorneys in criminal cases). 1/

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). ( In order to prevail on an ineffective assistance of counsel claim, a petitioner must satisfy Strickland's two-prong-test). The Court held that a defendant must demonstrate that the representation received "fell below an objective standard of reasonableness" and that there is "a reasonable probability" that but for counsel's unprofessional errors, the results of the proceedings would have been different. Id. at 688, 104 S.Ct. at 2065.

---

1/      [A] defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case .... The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome, Strickland v. Washington, 466 U.S. 668 (1984).

II.                          ARGUMENTS

GROUND ONE :

> PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL
> WHO PRESSURED AND ADVISED HIM TO CHANGE HIS INITIAL
> PLEA AND ENTER GUILTY PLEA AGREEMENT IN A RUSH WITH A
> LACK OF UNDERSTANDING OF THE RULE 11 PROCEEDINGS AND
> THE NATURE OF THE CHARGES VIOLATIVE OF THE SIXTH
> AMENDMENT TO THE UNITED STATES CONSTITUTION CONST. AMEND.
>                              6.

A.      Facts

1.      Petitioner's, counsel was objectively unreasonable in his represenatation of the petitioner, who was pressured to change his initial plea of **"not guilty"** to enter into a **"guilty plea"** agreement on the advice of his counsel, where counsel failed in his duty to investigate the drug related conspiracy charge against the petitioner, and other allege counts in the charging federal indictment, this was not done because counsel **"undervalued"** the merits of a potential defense, and the fact that counsel knew that petitioner, would not understand the nature of the charges, and the **"Rule 11"** proceedings.

Consequently, the petitioner, was charged in a drug related conspiracy, and was pressured to enter a plea of guilty on the advice of his counsel forcing an involuntary plea of guilt causing the trial court to lack a factual basis for the plea, **inter alia.**

Counsel's, representation fell below an objective standard of reasonableness, violative of the Sixth Amendment rights to have effective assistance of counsel during each phase of the criminal process as guaranteed by the Constitution of the United States Constitution. Const. Amend. 6.

Petitioner, contends that the trial records lacks a factual basis for the plea. the District Court must have a factual basis to accept the plea, the only facts established is that the petitioner, pleading guilty to (Count five) of a six count federal indictment which tends to provide a basis for the plea, which may not constitute to offense conspiracy charge, where in no way the petitioner, could have understood the nature of the conspiracy charge , nor can such understanding be **"inferred"** from any of his remarks during the **Rule 11 plea coloquy hearing,** where the records is lacking that the instant petitioner, understood the **"elements of the conspiracy offense"** before entering his guilty plea. It would appear to be a minimal requirement of the Rule 11 proceedings that the defendant understanding of the nature of the charges be demonstrated on the records.

The **instant petitioner Eric Hooten,** was before the Court on a Rule 11 plea colloquy proceeding with his attorney **William H. Paetzold, Esq.** on **February 12, 2003.** stemming from a Six Count Federal Criminal Indictment. Consequently, the petitioner, was there for thoughs proceedings on the advice of his counsel, who pressured him into changing his initial plea of "not guilty" to enter a "plea of guilty" to count five of the indictment, where the instant

petitioner, was charged in a drug related conspiracy being the first charging count in the indictment. 21 U.S.C. § 846. (Conspiracy to Distribute 100 Grams or more of Herion). and 21 U.S.C. § 841(a)(1). (Possession with Intent to Distribute Herion). inter alia, charges.

On February 12, 2003. the petitioner, entered his plea of guilty under pressure and on the advice of his counsel, who under-vauled the merits of a potential defense, was involuntary, inter alia, clearly the Rule 11 proceedings were so confusing that an ordinary person under the same circumstances as the petitioner, could not have "unambiguously" understood the nature of the charges or the proceedings as the records will show through the following(s) :

FEBRUARY 12, 2003 .
GUILTY PLEA HEARING
********************

a).     Page 3 lines 8 - 12
THE COURT :     The reason we are here this morning is that, in light of what your counsel's just said to me, my understanding is that you would like to consider a **change of your plea from not guilty to guilty.**

b).     Page 5 lines 21 - 25
THE COURT :     Do you understand that you are charged in that indictment with **conspiracy** to possess with intent to distribute 100 grams or more of herion, in violation of Title 21 of the United States Code, Section 846, and that that charge is a felony ?

c).     Page 13 lines 12 - 20
THE COURT :     All right. Let me now turn to the issue of consequences of entering a guilty plea that I mentioned earlier. As I've already mentioned, you are charged with the **crime of conspiracy** to possess with intent

to distribute 100 grams or more herion. The maximum penalty
for that charge is not more than **40 years** of imprisonment
followed by a minimum of five years of supervised release.
Do you **understand** that's the maximum penalty ?

THE DEFENDANT : Yes.

**d).**      Page 10 lines 23 - 25
THE COURT :      Do you **understand** what it means to take
an appeal or have and appeal ?.

THE DEFENDANT : **Vaguely.**

**e).**      Reiterating **c).** Page 13 lines 12 - 20
THE COURT :      All right. Let me now turn to the
issue of consequences of entering a guilty plea that I
mentioned earlier. As I've already mentioned, you are
charged with the **crime of conspiracy** to possess with intent
to distribute 100 grams or more herion. The maximum penalty
for that charge is not more than **40 years** of imprisonment
followed by a minimum of five years of supervised released.
Do you **understand** that's the maximum penalty ?

THE DEFENDANT : **Yes.**

**f).**      Page 14 lines 21 - 25
MR. RUBINO :      Actually, your Honor, so we are
completely clear, the maximum sentence is **20 years** for the
offense of conviction, which would be Count Five.

THE COURT :      Thank you for correcting that.
Obviously -- let me just take a look.

**g).**      Page 15 lines 3 - 25
               so he's not pleading to the **conspiracy** count; he's
pleading to the possession charge.

MR. RUBINO :      That was the **revised plea agreement**
that we just gave your Honor this morning.

THE COURT :      Okay.

MR. RUBINO :      **Late night negotiations.**
(A discussion was held off the record.)

THE COURT :      If I have in my hand a plea agreement February 11 saying he's going to plead to Count Five, that's the correct one ?

MR RUBINO :      Yes, your Honor.

THE COURT :      Sorry for that **confusion.**

Where would I find the maximum penalty ? What section is that ?

MR. RUBINO :      841 (b)(1)(C).

THE COURT :      Okay, thanks .

There's **no prior conviction** issue ? No second offender ? No prior ?

MR. RUBINO :      **We haven't filed.**

THE COURT :      Tha's fine. And quantity ?

MR. RUBINO :      The quantity is **98.9 grams.** The 100 grams is what triggers the five-year minimum mandatory under 841 (b)(1)(B) ; because it's under 100, the penalty applicable

**h).**      Page 16 lines 7 - 14

THE COURT :      Okay. Sorry for that, Mr. Hooten. Let's get back to where we were, though. Let me make clear, because **I had misadvised you,** you are charged with **conspiracy** but what I understand you are going to plead to, because of the negotiations, is the fifth count, which is a possession with intent to distribute **100 grams** or more of herion. Is that your understanding ?

THE DEFENDANT : **Yes.**

**i).**      Page 17 lines 7 - 17

THE COURT :      Okay. Now we are back on track.

There is a letter, the final version of which I gather was **just settled upon,** but have you had a chance to read **that plea agreement letter --**

THE DEFENDANT : Yes.

THE COURT :      And had you seen it, a prior draft, before today and discussed it with counsel ?

THE DEFENDANT : We discussed it **vaguely** but --

MR. PAETZOLD :   We discussed the prior plea agreement, your Honor, **and this morning we discussed the changes in the new plea agreement letter** .

The Petitioner's counsel Mr. Paetzold, attempted to clear up the client's obvious lack of understanding of the terms of the plea agreement new letter, which was just brought to his attention. And for that matter petitioner's, lack of understanding of the entire guilty plea proceedings, clearly incapacitated the petitioner, where the plea hearing records as reiterated above is full of confusion. not just to the petitioner, but the Honorable Court as well clearly noted upon the records.

Petitioner, Hooten, responded to the Court's questions are mostly **yes** with a couple of **vaguely** shows his lack of understanding to the nature  of the charges and the proceedings and not withstanding the seriousness of the consequences involved. The petitioner's, averments are **"unambiguous"** indications upon the records adduced that petitioner, could not have Constitutionally entered an intelligent, knowningly voluntary plea agreement of guilty without **"confusion"** and **"lack of understanding"** where there is **"deficiencies"** in the Rule 11(c) compliance which are fundamental constitutional rights of the petitioner, which are at stake, such loss could hardly be classified as insubstantial or harmless.

Petitioner, contends that he was pressured and confused due to the advice of his counsel, to change his initial plea of not guilty to guilty, because counsel undervauled the merits of a potential defense, who must have had a **"conflicting interest"** in advancing his own interest to the detriment of the instant petit-ioner, adversely affecting defense counsel's performance.

As the records is absent of defense counsel's objections at the very least to the sentencing recommendations, **inter alia.**

Subsequently, out of all the **"confusion"** relating to the Rule 11 Plea Colloquyhearing by the court, and both prosecuting and petitioner's defense attorney that inarguably it was the defendant / petitioner, the only one that was **"unconfused"** and clearly understood the contours of a Rule 11 hearing during these entire proceedings as if it's the petitioner, regarded as a legal scholar during these very technical and meticulous proceedings, would be absurdity which doesn't need great emphasis, but some emphasis syllogistic. See : **United States v. Journet, 544 F.2d at 635 (1976). (quoting);** **McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).** The Supreme Court has emphasized that there must be strick adherence to its requirements in the acceptance of a guilty plea. Exercising its supervisory power over the federal courts, the Court determined that the sanction for non-compliance would thereafter be to set aside the plea and to offer the defendant the opportunity to plead anew to the charge.

In the instant case the petitioner Hooten, was represented by counsel Mr. William H. Paetzold, Esq. during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea in questioning depends on whether counsel's advice " was within the range of competence demanded of attorneys in criminal cases ". **McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).** 2/

For a waiver to be valid under the **"Due Process Clause"**, it must be an intentional relinquishment or abandonment of a known right or privilege. Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.

> This two-part test is applicable to petitioners who challenge the effect-iveness of counsel after the entry of a guilty plea.
>
> **Hill v. Lockhart, 474 U.S. 52 (1985)** .

---

2/     [I]n the federal regime we have Rule 11 of the Federal Rules of Criminal Procedures which governs the duty of the trial judge before accepting a guilty plea.  See :  McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166 (1969).

In other words, petitioner Hooten, must show that his counsel Mr. Paetzold's, representation fell below an objective standard of reasonableness, and that but for Mr. Paetzold's, errors Hooten, would have continued on insisting on going to trial rather than plead guilty. **Id. at 56 - 60, 106 S.Ct. at 369 - 71.**

In this instant case, minimal factual investigation by the petitioner's, counsel Mr. Paetzold, would have uncovered that petitioner Hooten, was not a target of any acts of conspiracy to sell drugs involving a federal criminal investigation, and that the elements of a conspiracy would not have proved in this case against the petitioner Hooten, who had a lack of understanding of the nature of that charge, where a federal criminal investigation was already underway before the **"September 24, 2002"**. date in questioning all of which proceded the petitioner's, understanding of his involvement to the conspiracy charge.

Had counsel for the petitioner, investigated the nature of the charges, and valuing the merits of a potential defense or even engaged in a more effective, and productive plea negotiations, he might have been able to correctly advise the petitioner, of a more reasonable analysis and options for the petitioner, instead of the only **"open blind plea"** that his counsel rushed the petitioner, into under the early circumstances of the petitioner's, state of mind, was the results of **"ineffective assistance of counsel"** producing an UnConstitutional involuntary plea , Counsel, was also ineffective in relations to the Rule 11 hearing core concerns, where Rule 11 hearings are intended to ensure that a defendant, who pleads guilty

does so with an understanding of the nature of all the charges and
the consequences attached thereto pleading guilty.
**McCarthy v. United States, 394 U.S. 459 (1969).**

The Sixth Amendment clearly entitles a criminal defendant,
to effective assistance of counsel during the plea phase.
**Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d
674 (1984).** It is clear that the petitioner Eric Hooten, has demonst-
rated and satisfied the "two-prong-test" set under "Strickland",
where the avertments are straightforward "reiterating" parts of the
plea colloquy records, pointing to "deficiencies" amounting to
confusion also to the point where petitioner, was under the impression
that he would not be receiving any such enhancements relating to pass
prior convictions. The petitioner, could not have been equipped
intellignetly to accept the kind of plea offer made to him on the
advice of his counsel.

**Petitioner's Plea was involuntary and should be withdrawn as pled .**

GROUND TWO :

>       COUNSEL WAS INEFFECTIVE AT SENTENCING FOR FAILING TO
>       OBJECT TO DISTRICT COURT ADOPTION OF (PSR) FINDINGS
>       SENTENCING CALCULATIONS CLASSIFICATION AS A CAREER
>       OFFENDER RESULTING IN AN INCREASE OF SENTENCE VIOLATIVE
>       OF THE FIFTH  AND SIXTH AMENDMENT TO THE UNITED STATES
>       CONSTITUTION, CONST. AMEND. 5, 6.

B.      Facts

2.      On February 12, 2003. the petitioner, entered a plea of
guilty to Count Five of a Six Count Federal Criminal Indictment to
21 U.S.C. § 841(a). (Possession with intent to distribute 98.9
grams of herion). specified in the March 27, 2003. (PSR), i.e.
Presentence Investigation Report , ¶ # 26.

        Petitioner Eric Hooten, did not was not aware of and had no
intentions on make a plea agreement which would include the use of
increase punishment based upon the use of prior convictions, and
was under the impression from the Rule 11 plea hearing that non would
be used since it was asked about at that time by the Court indicated
in the plea hearing records, where the records is absent of an
intelligent knowning admission of such discussion, and that what the
records will show is that the government admitted that non has been
filed in this particular case. See: Page 15 lines 18 - 21 of the
February 12, 2003. Rule 11 hearing.

Prior Convictions use in this case should have been omitted, because of the non-compliance with 21 U.S.C. § 851(a)(1) .

21 U.S.C. § 851(a)(1) reads in part :

§ 851.  Proceedings to establish prior convictions

(a)  Information filed by United States Attorney

(1) No person who stands convicted of an offense under this part shall be sentenced to increase punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon .

Prior conviction s were relied upon in this instant case to increase / enhance the petitioner's, instant conviction .

On May 1, 2003. the petitioner Hooten, and his counsel Mr. William Paezold. appeared before the Honorable J. Janet C. Hall, for the purposes of sentencing in the United States District Court District of Connecticut Case No. 3:02 CR 278. after pleading guilty to Count Five of the criminal indictment.

Subsequently, during the May 1, 2003. sentencing hearing the Court ask if counsels from either side had any objections and both counsels had no objections to make as to the (PSR) findings and sentencing calculations, thus the Court accepts and adopt it's findings made in the (PSR).

The (PSR), determined a base offense level: for 21 U.S.C. § 841(a)(1). Guideline § 2D1.1 . Guideline § 2D1.1(c)(8) established a base offense of **24.** For Possession With Intent to Distribute at least 80 grams of Herion. Noted in ¶ **# 32** of the (PSR).

Consequently, because the petitioner, was determined to be a **career offender** due to prior convictions use under § 4B1.1 with a statutory maximum of **20 years** imprisonment increasing his offense adjusted level to **32.** And because of a total of 21 Criminal History points were also calculated his criminal histroy category was determined to be **VI.** Of course, since the petitioner, has pleaded guilty he than qualified for an adjustment for acceptance of responsibility under § 3E1.1(a) a two level reduction and because of it's timely notification he received an additional one level reduction under the guideline §§ 3E1.1(b)(1),(b)(2).

This resulted in a total reduction of the petitioner's, base offense level to **29.** with a criminal history category of **VI,** resulting in a sentencing range of **(151 to 188)** months imprisonment.

Défense counsel Mr. Paezold, failed to object and challenge the (PSR) computation of the petitioner's sentencing calculations and recommendations following the use of prior convictions lacking compliance with statutory provisions .

> Counsel's performance "fell below" an objective standard of reasonableness. The petitioner, was prejudice by his counsel's deficient acts or omissions. **Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)** .

Counsel failed to challenge the use of prior convictions
because the records is absent of compliance with 21 U.S.C. § 851(a)(1).
Because the government prosecution failed to comply with the statutory
provision § 851(a)(1), application a complete failure to follow
through with the requisite retacheting procedure, as the language
clearly states.

Counsel failed to challenge the Constitutionality of the
considered prior convictions as part of the instant sentencing
Proceedings of the petitioner, because any number of the four prior
convictions reflected in ¶ # 38 of the (PSR). Couls have been UnConst-
ionally obtained resulting in a denial of constitutional rights
effective assistance of counsel.

Counsel failed to file and sentencing Motions or applications
requesting Downward Departures on any number of the basis appropriately
categorizing Downward Departures, even to the point under **§ 4A1.3** .Coun-
sel should not have allowed this aspect of the plea agreement to THE
waiver of the petitioner's, very few rights, in a last minute
agreement letter of **February 11, 2003. # 4.** Guideline Stipulation.

### This is the reason why !

Counsel for the defendant would be able
to argue and urge the Sentencing Court
to depart from the **draconian range** of
the career offender guidelines. See :
**United States v. Rivers, 50 F.3d 1126
(2nd Cir. 1995).**, in which the Second
Circuit held:

section **4A1.3** manifests the Commission's
view that a sentencing judge should
exercise discretion whenever the judge
concludes that the consequences of the
mathematical prior-history calculation,
prescribed by section **4A1.1** and **4A1.2**,
either underrepresent or overrepresent
the seriousness of a defendant's prior
record. We also agree that in the case
of a defendant whose offense level is
raised by his criminal history into
career offender status, such discretion
may be exercised, to the extent thought
appropriate, to reduce either the
criminal history category or the offense
level, or both. Id. at 113 $.

The instant petitioner Eric Hooten, was deprived of his Sixth
Amendment right to Effective Assistance Of Counsel during his senten-
cing phase of trial. Sentencing is a critical stage of trial at which
a defendant is entitled to effective assistance of counsel, and a
sentence imposed without effective assistance must be **vacated** and
reimposed to permit facts in mitigation of punishment to be fully and
freely developed.

To support a claim for **ineffective assistance of counsel**,
petitioner must demonstrate that his trial counsel's performance
"**fell below an objective standard of reasonableness**," and that he
was prejudice by counsel's deficient acts or omissions.
**Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674**
**(1984).** Where the records before the court, should substantiate that
the instant petitioner, has satisfied both of the elements.

First, trial counsel's representation fell below the range of competence demanded of attorneys when he failed to challenge the (PSR) computation of the petitioner's sentence. **Id. at 687, 104 S.Ct. 2052.** Pursuant to § 851. Proceedings to establish prior convictions, used to determine if the career offenders provisions is invoked under the circumstances of this case as a requisite retacheting procedure, to § 4B1.1 of the sentencing guidelines (emphasis added). Here, where the (PSR) sentencing calculations did determine that the petitioner, qualifies as a career offender, where there had been no compliance for filing information under § 851. Counsel, plainly should have objected to it's use and the adjustment of his offense level and criminal history category increased. The failure to object to the calculation error was a clear lapse in representation. Because the Sentencing Guidelines have become a critical ... facet of federal criminal proceedings ... familiarity with the structure and basic content of the guidelines ... has become a necessity for counsel who seek to give effective representation.

See : **Jackson v. Leonardo, 162 F.3d 81 (2nd Cir. 1998).**

(Where there is no plausible explanation for counsel's error). But, Appellate counsel's failure to raise claim under the double jeopardy clause perjudiced defendant for the purpose of ineffective assistance claim. As in the instant case counsel's failure at sentencing.

To establish prejudice, petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different.

See : **Glover v. United States**, 531 U.S. 198, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001). (Holding that any [increase in the] amount of actual jail time due to Sentencing Guideline errors, constitutes prejudice under the Strickland doctrine).

3.      The Petitioner's § 2255. in the instant case under these circumstances stemming from the entry of a guilty plea where the initial § 2255. was specifically relating to counsel's failure to file a requested appeal, which was not required to show or raise any other issues in that initial § 2255. And therefore, the § 2255. now before this Honorable Court should not be construed as a second successive § 2255. (quoting); **McHale v. United States**, 175 F.3d 115 (2nd Cir. 1999).



Petitioner's Plea should be withdrawn and his Sentence Set aside and Vacated .

## CONCLUSION

For the foregoing reasons, Petitioner Eric Hooten, has clearly alleged that he has been deprived of his Constitutional rights to effective assistance of counsel, in relations to the plea phase and his sentencing phase in a criminal proceedings. Petitioner, requests an evidentary hearing and appoint new counsel to assist and conduct the nature of those proceedings. And further requests the Honorable Court to Vacate and Set aside his Sentence as well as Withdraw the Plea consistent with the kinds of claims raised in a § 2255.

Date : _MAY 27, 2005_____

Respectfully Submitted ,

_Eric Hooten_

Eric Hooten
14881-014
FCI Fort Dix
P.O. Box 7000
Fort Dix, NJ 08640

PETITIONER   (PRO SE)

## CERTIFICATE OF SERVICE

I, Eric Hooten, do hereby swear and attest that I have sent true and correct copies of the foregoing to the parties listed below.  I have effected service by placing a true and correct copy of these documents in the US mail, sufficient postage pre-paid this _27_ , day of May 2005 at Fort Dix, New Jersey.

Office of the United States Attorney
915 Lafayette Blvd.
Bridgeport, Connecticut 06604

_Eric Hooten_
Eric Hooten
Federal Correctional Institute
PO Box 7000 (West Compound)
Fort Dix, New Jersey 08640