UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL NO.3:03CV1972(JCH) |
| | : | CRIM. NO.3:02CR278(JCH) |
| v. | : | |
| | : | |
| ERIC HOOTEN | : | September 29, 2006 |

UNITED STATES' MEMORANDUM IN
OPPOSITION TO Defendant'S SECOND AMENDED
MOTION TO VACATE CONVICTION AND SENTENCE

By motion dated August 2, 2006, the petitioner, Eric Hooten,
seeks to vacate, set aside, and correct his conviction and
sentence pursuant to Title 28, United States Code, Section 2255.
The motion should be denied for the reasons set forth herein.

I.  BACKGROUND

    A.  Procedural History

On October 2, 2002, a federal grand jury indicted Eric
Hooten and his co-conspirators Cesar Batista and Julio Pagan, for
their participation in a conspiracy to distribute heroin.  The
defendant entered a negotiated guilty plea on February 12, 2003
to Count Five of the indictment.  He was sentenced on May 1, 2003
to a term of imprisonment of 151 months.  He was given credit for
time served.  The defendant was further ordered to serve a three-
year term of supervised release.  On July 7, 2003, the defendant
filed a notice of appeal.  However, on September 22, 2003, the
court of appeals dismissed the appeal as untimely.

On November 7, 2003, Hooten filed his initial Section 2255 pleading arguing that his trial counsel was ineffective in failing to timely file a notice of appeal.  By order dated November 10, 2004, the Court denied the defendant's motion, but permitted him to amend his petition within 30 days to include an allegation that his waiver of his right to appeal was not knowing and voluntary.

On June 22, 2005, the defendant filed a Supplemental Memorandum in Support of his motion to vacate under Section 2255. However, this supplemental pleading did not allege in any fashion that his appeal waiver was not knowing and voluntary.  On February 6, 2006, the Court granted the defendant's motion that he receive appointed counsel to represent him.

Finally, on August 4, 2006, the defendant filed a Second Amended Motion to Vacate under Section 2255 arguing that his appeal waiver was not knowing and voluntary.

The defendant is currently incarcerated at FCI-Schuylkill, in Minersville, Pennsylvania.

B.  Factual Background

On October 10, 2002, Eric Hooten was arrested in connection with his participation in a conspiracy to distribute heroin in the area of the CBL Market in Hartford, CT.  From July 30, 2002 through September 24, 2002, Mr. Hooten and co-defendants Cesar Batista and Julio Pagan sold quantities of heroin on five

-2-

separate occasions to a cooperating witness (CW) working with the Drug Enforcement Administration (DEA). All of the transactions were conducted in the area of the CBL Market in Hartford, CT.

Mr. Hooten was involved in the last transaction, which occurred on September 24, 2002. On that occasion, the CW made a telephone call to arrange for a heroin transaction with Julio Pagan. However, on this occasion, Mr. Hooten answered the telephone. Mr. Hooten advised the CW that Mr. Pagan no longer had the telephone, but that Mr. Hooten could sell the CW heroin if he/she came to the CBL Market.

Under the direction of the DEA, the CW went to the market with $8,000 in official government funds. The CW met with Mr. Hooten, who was present in the store with Mr. Batista. Mr. Batista told Mr. Hooten to charge the CW $75 per gram. The CW then handed Mr. Hooten $7,500. The CW observed Mr. Hooten go to the counter area of the store and obtain the heroin, which he then gave to the CW. The laboratory analysis revealed a net weight of 98.9 grams of heroin.

    C.   The Plea Hearing

At the trial level, the defendant was represented at the plea hearing by court-appointed defense counsel, Attorney William H. Paetzold. Mr. Paetzold negotiated an extremely favorable plea deal for his client.

On February 12, 2003, the defendant pleaded guilty to Count Five of the indictment as part of a plea agreement with the government (Doc. 42; attached to the government's initial memorandum).  Specifically, the government agreed that, rather than plead guilty to the broader conspiracy count which is the offense to which the co-defendants pleaded guilty, Mr. Hooten would plead guilty to the lesser-included offense in Count Five of the Indictment, which charged him with Possession with Intent to Distribute 100 grams of more of Heroin.  Although this charge would ordinarily carry a five-year minimum mandatory sentence, because the heroin that Mr. Hooten possessed on that date actually weighed less than 100 grams (98.9 grams), the mandatory minimum sentence would not apply (as it would have in the conspiracy count) and Mr. Hooten would be sentenced under the Sentencing Guidelines.[1]  In exchange for this concession, the plea agreement provided that the defendant would waive his right to appeal or collaterally attack his sentence if he was sentenced to not more than 188 months imprisonment, which was the high end of the guidelines range the parties calculated the defendant to be in.

---

[1] Had the government not agreed to this concession, the defendant's guidelines range would likely have been 188 to 235 months.

The written plea agreement contains the following waiver language:

> The defendant acknowledges that under certain circumstances he is entitled to appeal his conviction and sentence.  18 U.S.C. § 3742. It is specifically agreed that the defendant will not appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255, the conviction or sentence of imprisonment imposed by the Court if that sentence does not exceed 188 months, even if the Court reaches a sentencing range permitting such a sentence by a Guideline analysis different from that specified above.  The defendant expressly acknowledges that he is waiving his appellate rights knowingly and intelligently.

During the plea colloquy, the Court specifically canvassed Mr. Hooten on this appeal waiver:

*The Court*: Do you understand what it means to take an appeal or have an appeal?

*The Defendant*: Vaguely.

*The Court*: Okay.  What that means is another court, in New York, that sort of sits over my court here and so defendants like yourself have the right, after trial, to go down, to ask that court to look at what I did during the trial and see if I made any mistakes and if I made mistakes, they would tell me to fix those mistakes.

However, when a person enters a guilty plea, there's no trial and so there's no right to appeal the conviction or finding of guilt.  Do you understand that?

*The Defendant*: Yes.

*The Court*: There is a separate right of appeal, and that right to appeal is in relationship to the sentencing that follows a conviction or a plea of guilty.  And my understanding is that both yourself and the government have reserved the right to appeal my ruling on sentencing.

*Mr. Paetzold*: Actually, your honor, we had late negotiations yesterday afternoon.

*The Court*: That's fine.  Maybe I'm looking at the old one.

*Mr. Paetzold*: Part of the plea agreement has a waiver [of] right to appeal the sentence that I've discussed with Mr. Hooten this morning.

*The Court*: I'm sorry, it was on the bench here and I didn't look at the new one.  Hold on just a second.

All right.  Apparently, under the plea agreement that you are considering entering into and pursuant to which you would enter a plea of guilty, the agreement calls for you to give up your right to appeal the sentence so long as the sentence is not greater than 188 months.

*The Defendant*: Yes.

*The Court*: Is that your understanding of what the agreement is?

*The Defendant*: Yes.

*The Court*: So what that means is no matter how I get to the sentence, if I sentence you to less than 188 or less number of months, then you are giving up your right to appeal the sentence part as well.  Do you understand that?

*The Defendant*: Yes

*The Court*: Obviously, if it's more than 188 months, you still have the right to appeal and you can ask that other court to look at what I did, to fix it because you think it's wrong. Okay?

<u>See</u> Transcript of Change of Plea Hearing at 11-13.

Later in the Court's canvass, the Court inquired of Mr. Hooten if he read the plea agreement before he signed it. Transcript at 18.  Mr. Hooten stated that he had read it and that he signed the plea agreement voluntarily and without any coercion.  Transcript at 18-19.

Further, when asked by the Court to summarize the contents of the plea agreement, Attorney Paetzold stated that he had reviewed the sentencing guidelines with his client, and that "Mr. Hooten would not be able to appeal the Court's ultimate sentence regardless of how the Court arrived at the ultimate sentence unless, as the Court indicated, the Court felt that a sentence in excess of the 188 months would be in order."  Transcript at 20.

Lastly, the Court gave the defendant a final opportunity to ask questions about anything about the proceeding that he did not understand.

*The Court*: Is there anything you don't understand about what's happened here this morning or in any way questions you have about your case?

*The Defendant*: No.

*The Court*: Okay.  Is there anything you want to ask me or ask counsel before you enter your plea?

*The Defendant*: No.

*The Court*: No?  Okay.  Are you sure?

*The Defendant*: Positive.

Transcript at 33-34.

The court then accepted the plea agreement and ordered that a pre-sentence investigation report be prepared by the United States Probation Office.

D. <u>The Sentencing Hearing</u>

On May 1, 2003, the Court conducted a sentencing hearing. The defendant was again represented by Attorney Paetzold. Mr. Hooten's adjusted offense level was 24 based upon a quantity of 98.9 grams of heroin.  However, because he was determined to be a career offender, his adjusted offense level became 32, with a criminal history category of VI.  Subtracting three points for acceptance of responsibility brought his total offense level to 29.  The Court determined the defendant's applicable sentencing guidelines range to be between 151-181 months in prison and up to three years of supervised release.  The Court sentenced Mr. Hooten to 151 months imprisonment, the low end of the guidelines range.

Lastly, the Court advised Mr. Hooten that, while he would ordinarily have the right to appeal his sentence, the plea agreement contained an appeal waiver, which would mean he had no right to appeal the sentence.  Transcript of Sentencing Hearing at 13-14.

II.  <u>THE APPEAL WAIVER WAS KNOWING AND VOLUNTARY</u>

To obtain collateral relief under 28 U.S.C. § 2255, the defendant must show that his "sentence was imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255.  Habeas corpus relief is an extraordinary remedy and should only be granted where it is necessary to redress errors

which, were they left intact, would "inherently result in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962).  The strictness of this standard embodies the recognition that collateral attack upon criminal convictions is "in tension with society's strong interest in [their] finality." Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995).  See also Strickland v. Washington, 466 U.S. 668, 693-94 (1983) (recognizing the "profound importance of finality in criminal proceedings.").

Defendant seeks relief from his conviction, entered after a guilty plea, for possessing heroin with intent to distribute in violation of 21 U.S.C. Section 841.  In his amended challenge, the defendant now argues that he did not knowingly and voluntarily waive his right to appeal his sentence.

In this circuit, a defendant's waiver of the right either to directly appeal or collaterally attack a sentence within an agreed-upon Sentencing Guideline range generally is enforceable. The Second Circuit has stated that, for an appeal waiver to be enforceable, the record must clearly demonstrate "'that the waiver was both knowing (in the sense that the defendant fully understood the potential consequences of his waiver) and voluntary.'" United States v. Monzon, 359 F.3d 110, 116 (2d Cir. 2004) (quoting United States v. Ready, 82 F.3d 551, 557 (2d Cir. 1996)).  See, e.g., Garcia-Santos v. United States, 273 F.3d 506,

509 (2d Cir. 2001)(upholding effectiveness of waiver of right to attack conviction pursuant to section 2255 petition); United States v. Garcia, 166 F.3d 519, 521 (2d Cir. 1999)(upholding effectiveness of waiver of right to appeal sentence).

Although appellate waivers are not absolute in scope, the circumstances under which courts will decline to enforce a waiver are limited.  See United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000) ("These exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of our jurisprudence.").  These exceptions include situations

> when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial, or other prohibited biases, when the government breached a plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

Id. at 319 (collecting cases)(citations and quotation marks omitted).

In this case, the defendant claims in his affidavit that he and Attorney Paetzold never discussed the appeal waiver and he therefore did not understand the consequences of waiving his right to appeal.  Affidavit, dated July 27, 2006.  Simply put, the Court should reject these bald assertions as they are completely at odds with the defendant's prior sworn statements in court and appear to be nothing more than self-serving statements designed to create an issue where none exists.  The defendant's

claims are even more incredible when you consider the fact that
he did not raise this issue in his initial petition; rather, he
raised it for the first time in his second amended petition **after**
the Court indicated it would permit him to amend his petition,
assuming it was true, on this particular ground.

As set forth above, this Court thoroughly reviewed the
specific terms of the plea agreement with the defendant to ensure
that he did in fact understand the various provisions therein.
As required by Rule 11(b)(1)(N), the district court highlighted
the appeal waiver provision, emphasizing the importance of the
provision to the defendant's rights and explaining the exact
consequences of his decision to enter into the agreement in terms
of his forfeiture of his right to appeal. The defendant
unequivocally acknowledged that he understood the waiver.
Moreover, Attorney Paetzold indicated on the record that he
discussed the appeal waiver with his client, a fact that the
defendant never disputed.  And, when it became time to actually
go forward with the guilty plea, the Court gave the defendant
every opportunity to ask questions of the court or his counsel.
Indeed, when the Court asked the defendant if he was sure that he
had no questions, he replied "Positive."  Transcript at 34.

Moreover, the defendant's statements to the Court were
consistent with his certification upon signing the plea agreement
that he had "read th[e] plea agreement letter and its

attachment(s) or ha[d] had it read or translated to him, that he
ha[d] had ample time to discuss th[e] agreement and its
attachment(s) with counsel and that he fully underst[ood] and
accept[ed] its terms." Plea Agreement, p. 6 (Doc. 42).

Further, the simplicity of the waiver provision containing a
specified number of months as the triggering event distinguishes
it from cases like United States v. Tang, 214 F.3d 365 (2d Cir.
2000), where the court failed to canvass the defendant on the
provision and where the appeal waiver related back to a
potentially ambiguous guideline range calculation. Indeed, the
Second Circuit has enforced appeal waivers where the trial court
identified a specific number of months that triggered the waiver.
See Monzon, 359 F.3d at 117-18 (enforcing appeal waiver where
magistrate judge advised defendant that he could not appeal if
sentence no more than 121 months).

In sum, there is no doubt that the defendant was fully aware
of the decision he was making. It is difficult to conceive of
how the district court could have been clearer about how this
waiver worked. The consequences of the waiver were spelled out
in precise detail. Nor does it seem realistic that the court
could have done much more to bring home to the defendant just how
important this provision was. And it strains credulity for the
defendant now to contend that he did not mean what he said to the
court when he told the court – under oath – that he understood

that he could not file an appeal if the district court sentenced him to 188 months or less.

Plainly, the defendant should not be permitted to get the benefit of his bargain while avoiding application of one of the key provisions benefitting the Government.  See United States v. Rosa, 123 F.3d 94, 97 (2d Cir. 1997) (discussing benefits to defendants and government of appeal waivers in plea agreements); United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993) ("[I]n no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.").

Accordingly, because the defendant does not meet the conditions under which a Court may decline to enforce a waiver of the right to file a § 2255 Motion, this Court should enforce the waiver provision and dismiss the defendant's petition.

IV.   <u>CONCLUSION</u>

For all of the reasons set forth herein, the defendant's motion to vacate, set aside and correct his sentence should be denied.

                        Respectfully submitted,

                        KEVIN J. O'CONNOR
                        UNITED STATES ATTORNEY


                        JAMES SMART
                        ASSISTANT U.S. ATTORNEY

               For: MARK D. RUBINO
                        ASSISTANT U.S. ATTORNEY
                        157 Church Street
                        New Haven, CT 06510
                        Telephone No. (203) 821-3828
                        Federal Bar No. CT03496

<u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing memorandum was sent via U.S. mail this 29th day of September 2006, to:

    Peter Schaffer
    1127 High Ridge Road, #330
    Stamford, CT 06905-1203

    William Paetzold
    140 Hebron Avenue, Suite 102
    Glastonbury, CT 06033


                              _____
                              MARK D. RUBINO