```
1                  UNITED STATES DISTRICT COURT

2                     DISTRICT OF CONNECTICUT

3
   *  *  *  *  *  *  *  *  *  * Criminal Docket
4                               *    No. 3:02CR278(JCH)
   UNITED STATES OF AMERICA,    *
5                 Plaintiff     *
                                * February 12, 2003
6            vs.                * 10:50 O'clock p.m.
                                *
7  ERIN HOOTEN,                 *
                 Defendant      *
8                               *
   *  *  *  *  *  *  *  *  *  * Bridgeport, Connecticut
9                     GUILTY PLEA

10         BEFORE THE HONORABLE JANET C. HALL
                UNITED STATES DISTRICT JUDGE
11

12 Appearances:

13 For the Government:         MARK RUBINO, ESQ.
                               Assistant U.S. Attorney
14                             157 Church Street
                               New Haven, CT
15
   For the Defendant:         WILLIAM H. PAETZOLD, ESQ.
16                             Moriarty & Paetzold
                               140 Hebron Avenue
17                             Suite 102
                               Glastonbury, Connecticut
18
   For Probation:            JOSEPH MONTESSI, ESQ.
19                             U.S. Probation Officer

20

21 Court Reporter:           Thea Finkelstein RMR, CRR
                               915 Lafayette Boulevard
22                             Bridgeport, CT 06604
                               203) 384-6067
23

24
   Proceedings recorded by mechanical stenography, transcript
25 produced by computer.
```

1               THE COURT:  Good morning.  We are here this morning
2    in the matter of the United States of America versus Eric
3    Hooten.  If I could have appearances, please.
4               MR. RUBINO:  Good morning, your Honor.  Mark Rubino
5    for the United States.
6               MR. PAETZOLD:  Attorney William Paetzold for Mr.
7    Hooten.
8               THE COURT:  We are here this morning, as I
9    understand it, Attorney Paetzold, the defendant wishes to
10   consider a change of plea from not guilty to guilty, is that
11   right?
12              MR. PAETZOLD:  That's right, your Honor.
13              THE COURT:  Before we begin, Mr. Hooten, I would ask
14   you to please rise so the clerk may administer an oath to you.
15              (Oath administered.)
16              THE COURT:  Mr. Hooten, first I want to be sure you
17   understand, you've just taken an oath and while you don't have
18   to answer any of my questions, if you do answer a question, it
19   has to be a truthful and complete answer.  Do you understand
20   that?
21              THE DEFENDANT:  Yes.
22              THE COURT:  If it wasn't truthful and complete,
23   because you've taken the oath, you could be subject to
24   prosecution for making a false statement or perjury.  Do you
25   understand that?

```
1              THE DEFENDANT:  Yes.
2              THE COURT:  Could you please state your full name
3    for me, sir?
4              THE DEFENDANT:  Eric Dwayne Hooten.
5              THE COURT:  Have you ever used any other names?
6              THE DEFENDANT:  No.
7              THE COURT:  The reason we are here this morning is
8    that, in light of what your counsel's just said to me, my
9    understanding is that you would like to consider a change of
10   your plea from not guilty to guilty.
11             THE DEFENDANT:  Yes.
12             THE COURT:  If you were to do that, you would be
13   giving up some very important rights that you have and there
14   would, of course, be consequences to a guilty plea and so
15   before I can let you change your plea, I need to ask you quite
16   a few questions this morning to be sure you understand those
17   rights and the consequences of your action.
18             Also, I can't accept a plea unless I believe that
19   there is a basis to support the conclusion that, in fact, a
20   crime was committed.  So for all of those reasons is why I'm
21   going to ask you a lot of questions, so I would ask your
22   patience in that respect.
23             If at anytime I ask you anything that you don't
24   understand, please let me know that.  I'll try to make it
25   clearer or at anytime, if you just want to consult with
```

1    counsel, ask him a question or talk to him, please just feel

2    free to do that.  I'll obviously see you doing it and I'll

3    stop my questions until you are done, all right, sir?

4            THE DEFENDANT:  (Nodding head.)

5            THE COURT:  How old are you, sir?

6            THE DEFENDANT:  33.

7            THE COURT:  Can you read and write English?

8            THE DEFENDANT:  Yes.

9            THE COURT:  How far did you go in school?

10           THE DEFENDANT:  Twelfth.

11           THE COURT:  Where were you born?

12           THE DEFENDANT:  Hartford, Connecticut.

13           THE COURT:  All right.  Have you taken anything in

14   the last 48 hours, any alcohol, drugs, any medicine of any

15   kind, that could affect your ability to understand what's

16   going on here today?

17           THE DEFENDANT:  No, ma'am.

18           THE COURT:  Fine.  Are you currently under the care

19   of a physician or a psychiatrist?

20           THE DEFENDANT:  No, ma'am.

21           THE COURT:  Have you ever received treatment for any

22   type of mental illness or emotional disturbance?

23           THE DEFENDANT:  Yes.

24           THE COURT:  And when did you get that kind of

25   treatment?

```
1                    THE DEFENDANT:  I'd say 1991.

2                    THE COURT:  Okay.  What was that for, Mr. Hooten.

3                    THE DEFENDANT:  Took a bunch of pills.

4                    THE COURT:  I see.  Did you continue to get

5       counseling or treatment of any kind after that time in '91.

6                    THE DEFENDANT:  No, ma'am.

7                    THE COURT:  No?  All right.  Have you been given a

8       copy of the indictment, that's the piece of paper that

9       contains the charges that the government has filed against

10      you?

11                   THE DEFENDANT:  Yes.

12                   THE COURT:  You have seen that?  And have you had a

13      chance to go over it with your attorney and talk to him about

14      it?

15                   THE DEFENDANT:  Yes.

16                   THE COURT:  All right.  And have you discussed the

17      charges against you and the case in general with Attorney

18      Paetzold?

19                   THE DEFENDANT:  Yes.

20                   THE COURT:  Do you understand that you are charged

21      in that indictment with conspiracy to possess with intent to

22      distribute 100 grams or more of heroin, in violation of Title

23      21 of the United States Code, Section 846, and that that

24      charge is a felony?

25                   THE DEFENDANT:  That's the indictment?
```

```
 1                THE COURT:  Yes, sir.

 2                THE DEFENDANT:  Yes.

 3                THE COURT:  All right.  So you understand that's the

 4     charge you face?

 5                THE DEFENDANT:  Yeah.

 6                THE COURT:  Obviously, you have a right to have

 7     counsel during any proceedings related to that charge.  Are

 8     you completely satisfied with the representation, services and

 9     advice given to you by Attorney Paetzold in this case?

10                THE DEFENDANT:  Yes.

11                THE COURT:  Do you feel you've had enough time to

12     talk with him and to discuss the case and the plea agreement

13     offer of the government and whether or not you should accept

14     it?

15                THE DEFENDANT:  Yes.

16                THE COURT:  Attorney Paetzold, have you had any

17     difficulty communicating with Mr. Hooten?

18                MR. PAETZOLD:  No, your Honor.

19                THE COURT:  Obviously, you've discussed the case

20     with him?

21                MR. PAETZOLD:  I fully discussed the case on

22     numerous occasions, yes.

23                THE COURT:  Do you feel he understands the rights he

24     would be waiving?

                   MR. PAETZOLD:  I do.
```

1          THE COURT:  Do you feel he's capable of

2    understanding the nature of the proceedings today?

3          MR. PAETZOLD:  I do.

4          THE COURT:  Have you advised him of the maximum

5    sentence and fine he faces, as well as discussed with him the

6    operation of the guidelines?

7          MR. PAETZOLD:  I've done both, yes.

8          THE COURT:  As I told you, you need to understand

9    the rights you have which you would give up by pleading

10   guilty, so I'm now going to turn to those questions.

11          First, you have, under the Constitution and laws of

12   the United States of America, the right to a speedy and public

13   trial by jury on the charges pending against you.  What that

14   means is that you have a right to continue to plead not guilty

15   today, which would mean you go to trial, and a trial would

16   mean that twelve citizens from the District of Connecticut

17   would sit in the jury box, would listen to all the evidence

18   presented, and based only on that evidence, determine whether

19   the government had carried its burden of proof beyond a

20   reasonable doubt that you had committed a crime.

21          Only if the jury unanimously agreed that the

22   government had so proven that would you, could you, be

23   convicted at trial.  Do you understand that's what's involved

24   with this trial by jury?

25          THE DEFENDANT:  Yes.

1          THE COURT:  And do you understand that you have the

2     right to participate in the selection of the jurors who would

3     decide your case?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you also understand that if the case

6     went to trial, you have the right to challenge the

7     composition, the makeup, of the jury panel on constitutional

8     grounds, if any existed?

9          THE DEFENDANT:  Yes.

10          THE COURT:  And do you understand that you have the

11    right at all points in the criminal proceeding against you,

12    whether it be pretrial motions, hearings, and of course at

13    trial, to be represented by counsel?

14          THE DEFENDANT:  Yes.

15          THE COURT:  All right.  And do you also understand

16    that at trial, you have the right, obviously through your

17    counsel but you have the right, to cross-examine and confront

18    every person who comes to testify on behalf of the government?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you also understand that your lawyer,

21    on your behalf, has the power to issue what are really court

22    orders telling people to come to court and give testimony in

23    your behalf?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you also understand that you have the

1  right to testify at this trial, at the trial of these charges,

2  and you also have the right to call other people to come and

3  testify in your behalf but you are not obligated to do either

4  of those things.

5          In other words, you could remain completely silent

6  and put on no defense, because you are presumed to be

7  innocent, you have no obligation to prove your innocence.  Do

8  you understand that?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Do you also understand that if you

11 didn't testify at trial, that no inference could be drawn by

12 the jury from your silence; that an inference of guilt could

13 not be drawn merely because you were silent.  Do you

14 understand that?

15         THE DEFENDANT:  Yeah.

16         THE COURT:  Okay.  Do you also understand that

17 unless and until I accept your guilty plea, you are presumed

18 by the law to be innocent because it's the government's burden

19 to prove your guilt beyond a reasonable doubt and unless and

20 until the government does that, you can't be convicted.

21         THE DEFENDANT:  Yes.

22         THE COURT:  Do you understand that you don't have to

23 prove your innocence; the government has to prove your guilt?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you understand you don't have to

1   plead guilty even if you are guilty?

2           THE DEFENDANT: Yes.

3           THE COURT: And do you understand you have a right

4   today, when asked how you plead, you can continue to say not

5   guilty if that's your choice?

6           THE DEFENDANT: Yes.

7           THE COURT: Do you also understand that by pleading

8   guilty, you may lose some important civil rights, such as the

9   right to vote, the right to hold public office, the right to

10  serve on a jury and the right to possess a firearm?

11          THE DEFENDANT: Yes.

12          THE COURT: Do you understand that if you plead

13  guilty today, and I accept your guilty plea, you would be

14  giving up all the rights I've just discussed with you, there

15  would be no trial of any kind and no right to appeal your

16  conviction?

17          THE DEFENDANT: Yes, ma'am.

18          THE COURT: Do you understand what it means to take

19  an appeal or have an appeal?

20          THE DEFENDANT: Vaguely.

21          THE COURT: Okay. What that means is another court,

22  in New York, that sort of sits over my court here and so

23  defendants like yourself have the right, after trial, to go

24  down, to ask that court to look at what I did during the trial

25  and see if I made any mistakes and if I made mistakes, they

1  would tell me to fix those mistakes.

2          However, when a person enters a guilty plea, there's

3  no trial and so there's no right to appeal the conviction or

4  the finding of guilt.  Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  There is a separate right to appeal, and

7  that right to appeal is in relationship to the sentencing that

8  follows a conviction or a plea of guilty.  And my

9  understanding is that both yourself and the government have

10  reserved the right to appeal my ruling on sentencing.

11          MR. PAETZOLD:  Actually, your Honor, we had late

12  negotiations yesterday afternoon.

13          THE COURT:  That's fine.  Maybe I'm looking at the

14  old one.

15          MR. PAETZOLD:  Part of the plea agreement has a

16  waiver to right to appeal the sentence that I've discussed

17  with Mr. Hooten this morning.

18          THE COURT:  I'm sorry, it was on the bench here and

19  I didn't look at the new one.  Hold on just a second.

20          All right.  Apparently, under the plea agreement

21  that you are considering entering into and pursuant to which

22  you would enter a plea of guilty, the agreement calls for you

23  to give up your right to appeal the sentence so long as the

24  sentence is not greater than 188 months.

25          THE DEFENDANT:  Yes.

1              THE COURT:  Is that your understanding of what the

2       agreement is?

3              THE DEFENDANT:  Yes.

4              THE COURT:  So what that means is no matter how I

5       get to the sentence, if I sentence you to less than 188 or

6       less number of months, then you are giving up your right to

7       appeal the sentence part as well.  Do you understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Obviously, if it's more than 188 months,

10      you still have the right to appeal and you can ask that other

11      court to look at what I did, to fix it because you think it's

12      wrong.  Okay?

13             Are there specific forfeiture issues in this case,

14      Attorney Rubino, or general forfeiture issues?

15             MR. RUBINO:  No, your Honor.

16             THE COURT:  I need to advise you, Mr. Hooten,

17      because of the nature of the crime involved here, which is a

18      drug crime, that the law requires that you would forfeit to

19      the United States any property or proceeds that you obtained,

20      directly or indirectly, from any drug dealing that's involved

21      in this case.  Do you understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Do you also understand that any property

24      that you used to commit the crime also is subject to

25      forfeiture?

1           THE DEFENDANT:  Yes.

2           THE COURT:  And having gone over the rights that are

3  involved in any waiver of rights involved in the change of

4  plea, do you have any question about those rights at this

5  time?

6           THE DEFENDANT:  No.

7           THE COURT:  All right.  Let me now turn to the issue

8  of consequences of entering a guilty plea that I mentioned

9  earlier.  As I've already mentioned, you are charged with the

10  crime of conspiracy to possess with intent to distribute 100

11  grams or more heroin.  The maximum penalty for that charge is

12  not more than 40 years of imprisonment followed by a minimum

13  of five years of supervised release.  Do you understand that's

14  the maximum penalty?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you also understand that you could

17  face a fine of up to $2 million?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Further, do you understand that in

20  connection with any term of imprisonment -- I'm sorry, in

21  connection with any term of supervised release, the Court

22  would impose conditions upon you and a violation of any of

23  those conditions would result in further time in prison?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And further, if the Court imposes a fine

1   upon you, that interest can be assessed on any unpaid balance

2   and penalties imposed if you are late in making the fine

3   payment?  Do you understand?

4            THE DEFENDANT:  Yes.

5            THE COURT:  And lastly, the Court, as part of any

6   sentence, must impose what's called a special assessment of

7   $100.  Do you understand that as well?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Further, because the maximum penalty is

10  40 years, I need to advise you that you cannot get probation.

11  In other words, the sentence imposed on you must include a

12  term of incarceration.  Do you understand that?

13           THE DEFENDANT:  Yes.

14           THE COURT:  All right.  Now, I think I now have the

15  correct plea agreement in my hand.

16           MR. RUBINO:  Actually, your Honor, so we are

17  completely clear, the maximum sentence is 20 years for the

18  offense of conviction, which would be Count Five.

19           THE COURT:  Thank you for correcting that.

20  Obviously -- let me just take a look.

21           MR. RUBINO:  Your Honor, can we have a moment?

22           THE COURT:  Yes, you may.

23           So he's not pleading to the conspiracy count; he's

24  pleading to the possession charge.

25           MR. RUBINO:  That was the revised plea agreement

1    that we just gave your Honor this morning.

2              THE COURT:  Okay.

3              MR. RUBINO:  Late night negotiations.

4              (A discussion was held off the record.)

5              THE COURT:  If I have in my hand a plea agreement

6    February 11 saying he's going to plead to Count Five, that's

7    the correct one?

8              MR. RUBINO:  Yes, your Honor.

9              THE COURT:  Sorry for that confusion.

10             Where would I find the maximum penalty?  What

11   section is that?

12             MR. RUBINO:  841(b)(1)(C).

13             THE COURT:  Okay, thanks.

14             There's no prior conviction issue?  No second

15   offender?  No prior?

16             MR. RUBINO:  We haven't filed.

17             THE COURT:  That's fine.  And quantity?

18             MR. RUBINO:  The quantity is 98.9 grams.  The 100

19   grams is what triggers the five-year minimum mandatory under

20   841(b)(1)(B); because it's under 100, the penalty applicable

21   penalty provision is 841(b)(1)(C).

22             THE COURT:  So B doesn't get triggered?

23             MR. RUBINO:  Correct, it does not.

24             THE COURT:  So there's no mandatory minimum

25   triggered.

```
1              MR. RUBINO:  There is not.
2              THE COURT:  Okay.  Sorry for that, Mr. Hooten.
3    Let's get back to where we were, though.  Let me make clear,
4    because I had misadvised you, you are charged with conspiracy
5    but what I understand you are going to plead to, because of
6    the negotiations, is the fifth count, which is a possession
7    with intent to distribute 100 grams or more of heroin.  Is
8    that your understanding?
9              THE DEFENDANT:  Yes.
10             THE COURT:  You are charged with that in the fifth
11   count in the indictment.  And do you understand that the
12   penalty for that offense is a maximum of 20 years of
13   imprisonment?
14             THE DEFENDANT:  Yes.
15             THE COURT:  And a maximum fine of a million dollars?
16             THE DEFENDANT:  Yes.
17             THE COURT:  Obviously -- and supervised release is
18   at least three years of supervised release and the maximum of
19   five years.
20             THE DEFENDANT:  Yes.
21             THE COURT:  Obviously, what I already advised you
22   about the conditions on supervised release and payment of
23   fines, interest, that would all apply as well, do you
24   understand that?
25             THE DEFENDANT:  Yes.
```

```
 1                THE COURT:  Okay.  Now we are back on track.
 2                There is a letter, the final version of which I
 3    gather was just settled upon, but have you had a chance to
 4    read that plea agreement letter --
 5                THE DEFENDANT:  Yes.
 6                THE COURT:  And had you seen it, a prior draft,
 7    before today and discussed it with counsel?
 8                THE DEFENDANT:  We discussed it vaguely but --
 9                MR. PAETZOLD:  We discussed the prior plea
10    agreement, your Honor, and this morning we discussed the
11    changes in the new plea agreement letter.
12                THE COURT:  All right.  Have you had a chance to
13    read the plea agreement that I presume you are about to sign?
14                THE DEFENDANT:  Yes.
15                THE COURT:  Okay.  And have you had a chance to ask
16    counsel any questions you had about it?
17                THE DEFENDANT:  Yes.
18                THE COURT:  Okay.  Do you feel you've had enough
19    time to consider that plea agreement, the letter, in terms of
20    what the government is promising or offering versus what you
21    will be doing in exchange?
22                THE DEFENDANT:  Yes.
23                THE COURT:  Do you have any questions left about the
24    plea agreement?
25                THE DEFENDANT:  No.
```

```
 1              THE COURT:  Okay.  You feel you understand it?
 2              THE DEFENDANT:  Yes.
 3              THE COURT:  Okay.  I guess at this point, if the
 4   parties wish to enter into this plea agreement, now would be
 5   the time to sign it.  Obviously, Mr. Hooten, it's your choice
 6   to decide whether to sign it or not but if you do wish to, now
 7   would be the time to do it.
 8              MR. PAETZOLD:  Your Honor, I apologize.  Mr. Hooten
 9   signed it prior to the Court coming out.
10              THE COURT:  That's fine as well.  Sometimes the
11   parties don't sign it before I come out.  If you want to hand
12   that up, then, Attorney Paetzold, that would be great.
13              I've just had handed up to me a letter dated
14   February 11, 2003, six pages in length, Attorney Rubino's name
15   below Attorney Rubino's signature.  Attorney Paetzold, that's
16   your signature there?
17              MR. PAETZOLD:  Yes, your Honor.
18              THE COURT:  Mr. Hooten, that's your signature as
19   well?
20              THE DEFENDANT:  Yes.
21              THE COURT:  Before you signed it, had you read the
22   letter?
23              THE DEFENDANT:  Yes.
24              THE COURT:  Before you read it, did you do so
25   voluntarily and without any coercion?
```

1    THE DEFENDANT: Yes.

2    THE COURT: Then I'm going to order that the letter

3    be filed at this time. Mr. Hooten, you can take a seat if you

4    would like and I would ask Attorney Paetzold if you would

5    briefly summarize the letter, particularly any parts I haven't

6    yet touched on the topic.

7    MR. PAETZOLD: Your Honor, I've reviewed with Mr.

8    Hooten the elements of the offense, the maximum penalty that

9    he faces. I also reviewed with him the sentencing guidelines,

10   what my interpretation of the sentencing guidelines would be.

11   I also advised him that my advisement is not the controlling

12   issue; it's the Court's decision as far as what the ultimate

13   sentence is going to be.

14   The plea agreement letter states that the government

15   and the defendant recommend to the Court a three-level

16   adjustment for his prompt and affirmative acceptance of

17   responsibility to the offense.

18   The government reserves the right to address the

19   Court at the time of sentencing, as does Mr. Hooten and

20   myself.

21   I discussed with Mr. Hooten the guideline

22   stipulation, that there is an agreement between the government

23   and Mr. Hooten that because he's a career offender, he goes to

24   category six with his criminal history. The base offense

25   level is level 32. Subtracting three levels for acceptance of

1    responsibility would bring him down to a total offense level

2    of 29, and the guideline range for that would be 151 to 188

3    months.

4         Neither the defendant nor the government would seek

5    any departures from that range and the Court would be free to

6    sentence him within that guideline range, and that Mr. Hooten

7    would not be able to appeal the Court's ultimate sentence

8    regardless of how the Court arrived at the ultimate sentence

9    unless, as the Court indicated, the Court felt a sentence in

10   excess of the 188 months would be in order.

11        I also reviewed with Mr. Hooten his waiver of his

12   trial rights and consequences of his plea, as the Court has

13   also done today, and that Mr. Hooten's plea was voluntarily

14   entered.

15        I also reviewed with Mr. Hooten the collateral

16   consequences associated with his change of plea and that his

17   plea of guilty to this offense would satisfy his criminal

18   liability in the District of Connecticut to this offense and

19   simply this offense.

20        No other promises have been made to him.

21        THE COURT:  All right.

22        MR. PAETZOLD:  I believe that sets forth the plea

23   agreement, and that's what I discussed with him.

24        THE COURT:  Great.  Thank you very much, counsel.

25        Attorney Rubino, is there anything you feel needs to

1    be added that's in the agreement that hasn't been mentioned?

2              MR. RUBINO:  No, your Honor.

3              THE COURT:  All right.  Mr. Hooten, is the plea

4    agreement that's just been described, is that what you

5    understood the agreement was as you signed it?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Okay.  I need to talk to you about

8    sentencing.  Do you understand that in the federal system, the

9    sentencing judge is bound by something called the sentencing

10   guidelines which the Court uses to determine sentencing range

11   in which I must sentence you unless there were extraordinary

12   reasons to go above that range or extraordinary reasons to go

13   below it.  Do you understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And do you understand that I won't know

16   what sentence I will impose pursuant to these guidelines until

17   the time of sentencing because I won't have had the

18   investigation prepared and the report written which the

19   probation office will do for me which will set out all of the

20   facts that I need to know in order to determine the guideline

21   range?  Do you understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And that, in federal court, unlike I

24   think some state court systems, therefore, you have to decide

25   whether you want to plead guilty or not without knowing what

1    your sentence will be.  Do you understand that?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  And if your sentence later on is more

4    severe than what you maybe hoped for or expected, you can't

5    withdraw your guilty plea at that time, do you understand

6    that?

7                    THE DEFENDANT:  Yes.

8                    THE COURT:  Now, have you talked to Attorney

9    Paetzold about the sentencing guidelines?

10                   THE DEFENDANT:  Yes.

11                   THE COURT:  And have you talked to him about how

12   they might apply in this case?

13                   THE DEFENDANT:  Yes.

14                   THE COURT:  All right.  Can you tell me, do you have

15   any expectations about what your sentence would be?

16                   THE DEFENDANT:  Not really.

17                   THE COURT:  Not really.  Okay.  In the plea

18   agreement letter, it talks about a range 155 to 188?

19                   THE DEFENDANT:  151 to 188.

20                   THE COURT:  Thank you.  151 to 188.  That's, I'm

21   sure, based on conversations between your counsel and

22   government's counsel.

23                   THE DEFENDANT:  True.

24                   THE COURT:  And it's based upon the best information

25   they have today or up to today.  Do you understand that?

1       THE DEFENDANT: Yes.

2       THE COURT: Okay. But I don't have any reason,

3   myself, to believe they're wrong in their analysis but the

4   fact is that things do sometimes change or things can be, more

5   facts can be, learned which might change the guideline

6   calculation.

7       So while you may expect that that's going to be the

8   range and that's where your sentence will fall, you can't --

9   there's no promise or any kind of expectation you should have

10  that that is the range in which your sentence will be. Do you

11  understand that?

12      THE DEFENDANT: Yes.

13      THE COURT: And part of the calculation of that

14  range is due to the assumption that you would be given

15  something called acceptance of responsibility.

16      THE DEFENDANT: Yes.

17      THE COURT: And in the letter agreement, where the

18  government promises to ask me to give you that, they say they

19  will do that only if you act in a way that shows that you have

20  accepted responsibility. In other words, you won't commit any

21  further crimes between now and the time of sentencing, for

22  example, or you didn't continue to be involved in what it is

23  you have been charged with here. Do you understand that?

24      THE DEFENDANT: Yes.

25      THE COURT: Okay. Do you also understand that even

1  if the government does ask me to give you acceptance of

2  responsibility, I won't make that decision until the time of

3  sentencing, when I decide based on the facts in front of me

4  that you have, in fact, accepted responsibility and are

5  entitled to all three of the points reducing the level.  Do

6  you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.  Do you also understand that in

9  the federal system, when a person receives a sentence, a term

10  of imprisonment, that the person must serve the sentence

11  imposed.  In other words, there's no such thing as parole or

12  early release in our federal system.  When you are given a

13  sentence of a certain number of months, you actually serve

14  those number of months.  The only reduction is for good time

15  credits which are earned, which can be earned at the rate of

16  54 days a year.  Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And do you also understand, I know I've

19  asked you this a couple of times, I just want to be sure, that

20  if you get a sentence at the time of sentencing, should you

21  plead guilty today and we proceed, you know, in a couple of

22  months to a sentencing, if that sentence is more severe or

23  higher than what you anticipated or hoped for today, you can't

24  at that time say, well, gee, Judge, I would like to take back

25  that guilty plea because I really didn't think this was going

1   to be my sentence.  You can't do that.  You are bound by the

2   plea that you enter today.  Do you understand that?

3                THE DEFENDANT:  Yes.

4                THE COURT:  All right then.  At this time, I'm going

5   to ask Attorney Rubino to put on the record the elements of

6   the offense that the defendant's proposing to plead guilty to.

7   By that I mean what the government would have to prove beyond

8   a reasonable doubt in order to convict him and then I'm going

9   to ask counsel to proceed then to lay out, in a summary

10  fashion, what evidence the government has which, if put before

11  a jury, would be a basis for them to find that, in fact,

12  beyond a reasonable doubt, a crime had been committed by the

13  defendant.

14               I'll ask you, Mr. Hooten, to listen to what the

15  government says because when he's done, I'm going to ask you

16  if there's anything he said about what you did that's mistaken

17  or incorrect, all right?

18               THE DEFENDANT:  All right.

19               THE COURT:  Go ahead, counsel.

20               MR. RUBINO:  Yes, your Honor.  If this matter were

21  to proceed to trial, the government would prove beyond a

22  reasonable doubt that in the District of Connecticut, the Drug

23  Enforcement Administration was conducting an investigation

24  into the distribution of heroin in Hartford, Connecticut, in

25  August and September of 2002.

1           Specifically, agents had, through the use of
2   confidential informants, been purchasing quantities of heroin
3   from co-defendants Caesar Batista and Julio Pagan.   On
4   September 24th, 2002, pursuant to that ongoing investigation,
5   confidential informants contacted the telephone that they had
6   used to purchase the heroin.  On that particular occasion,
7   however, defendant Eric Hooten answered the phone and spoke
8   with one of the confidential informants.

9           One of the confidential informants advised that he
10  was looking for 100 grams of heroin and wanted to speak to
11  Julio Pagan.  Mr. Hooten told the confidential informant that
12  Pagan was no longer responsible for selling the heroin but
13  that he, meaning Mr. Hooten, might be able to help out the
14  confidential informant.

15          Arrangements were made for the two confidential
16  informants to go to the CBL Market in Hartford where they met
17  directly with Mr. Hooten and further negotiated the purchase
18  of 100 grams of heroin.  Although Mr. Hooten was ready to
19  conduct the transaction at that time, the confidential
20  informants did not have the money on them at the time.  They
21  left.

22          A short while later, after having received the
23  official government funds from the agents, the confidential
24  informants returned to the market and met with Mr. Hooten, at
25  which time one of the confidential informants handed Mr.

1   Hooten $7,500 and in exchange, Mr. Hooten gave the

2   confidential informant a quantity of heroin which ultimately

3   was analyzed by the DEA lab, tested positive for heroin,

4   weighing approximately 98.9 grams.

5          The government would present the testimony of the

6   confidential informants, as well as some limited audio and

7   videotape of the transaction, as well as the testimony of the

8   surveiling DEA agents.

9          THE COURT:  Am I missing something?  How could he

10  plead guilty to possession with intent to distribute 100 grams

11  or more when your proof is 99?  Is he, in effect, pleading

12  guilty to a lesser included?

13         MR. RUBINO:  That's absolutely correct.  Because on

14  the day that he's charged, September 24th, the ultimate weight

15  is less than 98.9.

16         THE COURT:  I'm sorry if I wasn't -- I was thinking

17  as opposed to listening probably and I apologize for that.

18  Was the agreement to buy 100 grams?

19         MR. RUBINO:  Correct.

20         THE COURT:  But he didn't possess the 100 grams.

21         MR. RUBINO:  He possessed less.  He agreed, he's now

22  pleading guilty to the conspiracy, pleading guilty that on

23  September 24th --

24         THE COURT:  He possessed 100 grams or more.

25         MR. RUBINO:  Right.

1        THE COURT:  And he didn't.

2        MR. RUBINO:  Well, that's correct.  As your Honor

3   pointed out, lesser included.

4        THE COURT:  Let's go back to that.  I'll put the

5   book away.  If you had charged him with -- what's the next

6   lower quantity in heroin?  In other words, below 100 grams?

7   Is there a lesser amount or just --

8        MR. RUBINO:  Just as set forth an unspecified

9   amount.

10       THE COURT:  Detectable amount.

11       MR. RUBINO:  Correct.

12       THE COURT:  What's the maximum penalty for that?

13       MR. RUBINO:  20 years.

14       THE COURT:  Still the same, that's the C section you

15   had me in originally.

16       MR. RUBINO:  Had it been 100 grams or more, it would

17   be (b)(1)(B).

18       THE COURT:  The B section, that would have been 40

19   years with the five-year mandatory minimum, et cetera.

20       MR. RUBINO:  Correct.

21       THE COURT:  So in effect, you charged him with a

22   crime that had a five-year mandatory minimum and a 40-year

23   maximum but your proof is a lesser included offense.

24       MR. RUBINO:  That's right.

25       THE COURT:  Any reason you didn't go by route of a

1    substitute information?

2        MR. RUBINO:  You know, we could have done that but,

3    I mean, in fact, that's when we took a moment to talk, we were

4    just talking amongst ourselves, and had we been at trial and

5    proceeded that way, the government would have simply asked for

6    a special verdict form and lesser included offense

7    instruction.

8        THE COURT:  None of these questions -- I'm not at a

9    point where I think there's a problem; I'm just trying to

10   understand, make sure I've properly advised, most particularly

11   I'm concerned that the defendant have a clear understanding of

12   the maximum penalty, that I have that right and what crime

13   he's charged with and what penalty he faces.  So I just want

14   to be sure I have it straight in my own mind.

15       There's no question that you could go to trial on

16   Count Five and with the proof you just laid out, you would get

17   a conviction of a lesser included with the Apprendi question

18   of the jury, a detectable amount, they would presumably check

19   that, assuming they believed your proof, and then the penalty

20   faced would therefore be the 20 and no mandatory minimum.

21       MR. RUBINO:  Correct.  That's the proof we are

22   relying on.

23       THE COURT:  Thanks very much, Attorney Rubino.

24   Sorry to be slow this morning.

25       MR. RUBINO:  Sometimes we get to have some

1  interesting discussions.

2         THE COURT:  Mr. Hooten, first, let me ask you,

3  before I explain what that conversation was all about, let me

4  just make sure, with respect to what Attorney Rubino said you

5  did, is that a fair statement of what it is you did on

6  September 24th?

7         THE DEFENDANT:  Yes.

8         THE COURT:  All right.  So you had, on that day you

9  had, possession of, for your benefit, actually, just slightly

10  less than 100 grams, you are lucky I guess in that respect,

11  and that you possessed them and that you set up to sell them

12  and met with someone to sell them.

13         THE DEFENDANT:  Yes.

14         THE COURT:  All right.  And you knew that what you

15  had was something that contained heroin, is that also correct?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And this all happened up in Hartford,

18  Connecticut?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Okay.  What I was talking about to

21  Attorney Rubino, maybe you've discussed this with Attorney

22  Paetzold as well, about the charge that you are now pleading

23  to, but the reason I keep having these conversations, Mr.

24  Hooten, isn't that there's anything wrong or anything; it's

25  just that the original plea agreement had you pleading to a

1   different count and I sort of was focused on that and as we

2   get to each stage of my questions to you, I'm focusing on the

3   fact that we are in a different count.

4           The count that you are pleading to has you

5   possessing with intent to sell, which clearly is what's just

6   been described and you've just admitted happened.

7           THE DEFENDANT:   Yes.

8           THE COURT:   The indictment said that it was a

9   hundred grams or more and in the law, if it were a hundred

10  grams or more, the penalty is much more -- much greater.   I'm

11  sure Attorney Paetzold explained that to you.   Had it been the

12  100 grams or more, and that's what they could prove at trial

13  and the jury believed that and convicted you, you would face

14  that 40, maximum of 40 and the mandatory minimum of five.

15          What happens is they can charge you with this and

16  even if they don't have the proof at the time of trial, and

17  they prove less than a hundred, the law still allows them to

18  get a conviction of you, we would ask the jury, I just had a

19  jury return yesterday, you ask them which quantity has been

20  proven all the way down to a detectable amount.

21          Clearly your quantity had a detectable amount, the

22  jury would check that on this proof, if they believed it, and

23  you would be convicted of what's called a lesser included

24  offense.   And that offense has a maximum of 20 years, no

25  mandatory minimum.   All that I've already explained to you.

```
1              THE DEFENDANT:  Okay.

2              THE COURT:  That's all that I was really trying to

3    straighten out in my own head to be certain that I understood

4    what the charge was versus what their proof is.  But it's

5    clear, if a jury believed that proof, that you would be

6    convicted of a lesser included offense, which would have a

7    maximum penalty of the 20 years I've already talked to you

8    about.

9              I think we are almost through with the questions.

10   If I could just ask you a few more, Mr. Hooten.

11             Has anyone, whether it be any law enforcement

12   officer, government official, prosecutor, even your own

13   attorney, any person you've come in contact with since you

14   were first arrested, promised or suggested to you that merely

15   because you pled guilty, the Court would give you a lighter

16   sentence?

17             THE DEFENDANT:  No.

18             THE COURT:  Has anyone forced, threatened or coerced

19   you in any way into entering into a plea of guilty?

20             THE DEFENDANT:  No.

21             THE COURT:  Do you understand that the agreement

22   reached in this case, which is set forth in the letter,

23   resulted from negotiations and conversations between your

24   lawyer and the government's lawyer?

25             THE DEFENDANT:  Yes.
```

1        THE COURT:  Have any other promises been made to you

2   in connection with the entry of a guilty plea other than the

3   promises in the plea agreement letter?

4        THE DEFENDANT:  No.

5        THE COURT:  Have any promises been made to you as to

6   what sentence I'll impose in this case if I accepted a guilty

7   plea?

8        THE DEFENDANT:  No.

9        THE COURT:  Do you understand at this time that I

10  don't know what sentence I'll impose in this case because I

11  haven't heard from the probation office or from counsel?

12       THE DEFENDANT:  Yes.

13       THE COURT:  And if, in a few moments, when the clerk

14  asks you how you plead, if you were to respond guilty at that

15  time, would you be doing so voluntarily and of your own free

16  will because you are guilty and for no other reason?

17       THE DEFENDANT:  Yes.

18       THE COURT:  Do you feel you understand the

19  consequences of pleading guilty?

20       THE DEFENDANT:   (Nodding head.)

21       THE COURT:  Is there anything you don't understand

22  about what's happened here this morning or in any way

23  questions you have about your case?

24       THE DEFENDANT:  No.

25       THE COURT:  Okay.  Is there anything you want to ask

me or ask counsel before you enter your plea?

THE DEFENDANT:  No.

THE COURT:  No?  Okay.  Are you sure?

THE DEFENDANT:  Positive.

THE COURT:  Okay.  Attorney Paetzold, is there any reason you know of why I shouldn't let Mr. Hooten enter a plea of guilty if that's his choice?

MR. PAETZOLD:  No, your Honor.

THE COURT:  Attorney Rubino, is there anything I've overlooked?

MR. PAETZOLD:  No, your Honor.

THE COURT:  Mr. Hooten, the procedure in court calls for the clerk to read to you the charge to which you then enter your plea.  You've indicated you have the indictment,
15  but would you want us to read Count Five to you before she
16  asks your plea or would you waive that?

17                THE DEFENDANT:  Read it.

18                THE COURT:  You want to read it?  Cathy, do you have
19  it here?  There, it's right there.

20                THE CLERK:  In the matter of the United States of America versus Eric Hooten, criminal No. 3:02CR278(JCH).
22  Indictment.  The grand jury charges.  Count Five.

23                On or about September 24th, 2002, in the District of
24  Connecticut, Caesar Batista and Eric Hooten, the defendants
25  herein, knowingly and intentionally possessed with intent to

1  distribute and did distribute 100 grams or more of a mixture

2  and substance containing a detectable amount of heroin, a

3  Schedule I controlled substance, all in violation of Title 21,

4  United States Code, Section 841(a)(1) and 841(b)(1)(B)(i) and

5  of Title 18, United States Code, Section 2.

6          THE COURT:  Thank you.

7          Would you put the defendant to plea then now on

8  Count Five, Cathy?

9          THE CLERK:  In the case of the United States versus

10  Eric Hooten, criminal No. 3:02CR278, as to Count Five of the

11  indictment charging you with a violation of Title 21, United

12  States Code, Section 841(a)(1) and 841(b)(1)(C) --

13          THE COURT:  No.

14          THE CLERK:  Charging you with a violation of Title

15  21, United States Code, Section 841(a)(1) and

16  841(b)(1)(B)(i)--

17          MR. RUBINO:  She had it right.

18          THE COURT:  How could she have it right if I was

19  looking at Count Five and it didn't have the right section

20  number?  Cathy, give me back the indictment.

21          The indictment charges him under 841(a)(1), which of

22  course is right, and 841(b)(1)(B)(i), is that right?

23          MR. RUBINO:  That's right, yes.

24          THE COURT:  Then we are looking at the plea

25  agreement letter, and that says 841(b)(1)(C) -- I'm sorry, you

```
 1   are right.  Here we go.  Count Five is under -- but he's
 2   pleading to Count Five.
 3              MR. RUBINO:  Right.  I understand.
 4              THE COURT:  So she read in Count Five, she should
 5   ask him if he pleads to Count Five, which is under
 6   841(b)(1)(B)(i).
 7              MR. RUBINO:  But those have different penalty
 8   provisions.
 9              THE COURT:  They do, but that goes back to the
10   conversation I had with you a few minutes ago.
11              MR. RUBINO:  Judge, I mean, I don't know if
12   it's. . .
13              THE COURT:  He's pleading guilty to Count Five is
14   what you told me and Count Five says (b)(1)(B)(i).  I
15   understand what you are saying, your count is Count C, the
16   lesser included in that, but if he pleads to Count Five, he's
17   pled to -- that's kind of why I said why wouldn't we do a
18   substitute information.
19              MR. RUBINO:  In the future, it might be cleaner.
20              THE COURT:  See, the problem is I think if he pleads
21   to Five, he does face 40 and a mandatory minimum of five and
22   the fact that you don't have proof means I shouldn't let him
23   plead to Five.  Because you can't prove Five.  You can prove a
24   lesser included of Five, I understand.
25              MR. RUBINO:  Right, but it's -- the same point goes
```

1    if we were in trial, he would be guilty of the lesser included

2    offense in Count Five, so he's pleading guilty to what he

3    could be convicted of had he been at trial.  The government

4    wouldn't --

5            THE COURT:  The judgment that would enter after a

6    trial, and a jury finding on Count Five, would be what?  He

7    was guilty of (B)(i) or guilty of (C)?

8            MR. PAETZOLD:  (C).

9            MR. RUBINO:  (C).

10           THE COURT:  So he pleads to (C) even though the

11   indictment says (B)(i)?

12           MR. RUBINO:  Well, the offense is 841(a)(1)

13           THE COURT:  That's true.  And the (B)(i) and (C) is

14   just the penalty.

15           MR. RUBINO:  Correct.  Which is really, it's a

16   sentencing issue because we are not dealing with any mandatory

17   quantity that would trigger a mandatory minimum.

18           THE COURT:  He should definitely only be asked how

19   he pleads to (C) because I can't accept a guilty plea to

20   (B)(i).

21           MR. RUBINO:  Correct.

22           THE COURT:  So that's clear.  The problem, though,

23   is he's pleading to Count Five, which is not (C).  So when she

24   asked him how do you plead to Count Five, and he says guilty,

25   isn't that to (B)(i)?  I guess we'll just be very clear what

```
 1   we are doing on the record.  I'm not sure what the clerk's
 2   office is going to write it up as.  I guess you need to treat
 3   it as if, let's say we went to trial, yesterday's verdict,
 4   instead of checking the five kilograms of cocaine, you know,
 5   the top quantity, they would check a detectable amount, they
 6   would charge for the five kilograms and that's what the
 7   statute in the count said but it was not what they were
 8   convicted of, they were convicted of a lesser included.
 9   However you would have handled this in a judgment is how you
10   should handle this one, okay?
11               THE CLERK:  All right.
12               THE COURT:  I'm told by the clerk she doesn't
13   usually worry about this because she picks it up off the
14   probation officer's report.  What would the probation
15   officer's report indicate?  ^Probe probe we would look under
16   Count Five which would say (B)(i) because that's what he's
17   actually pled to.
18               THE COURT:  But I can't accept a plea to 100 grams.
19   Probe probe no, ma'am.
20               THE COURT:  But Attorney Rubino's absolutely right,
21   if we went to trial, they wouldn't come in with a substitute
22   indictment or information in the middle of the trial.  Because
23   it's the penalty phase only --
24               MR. RUBINO:  Perhaps just having him, wording the
25   actual entry of the plea to the 841, lesser included offense
```

```
1    of Count Five, that is 841(a)(1) and 841(b)(1)(C).

2                THE COURT:  Okay.

3                MR. RUBINO:  Which is exactly what's happening.

4                THE COURT:  Which doesn't violate his right to be

5    indicted by a grand jury because it's a lesser included

6    offense?

7                MR. RUBINO:  Right.

8                THE COURT:  Okay.  We are going to do that.  I'll

9    put you to plea, how's that, so I don't put poor Cathy to the

10   test on this one.

11         .    She's already read to you the language in Count

12   Five, which tells you what you are charged with, which is that

13   on or about September 24th of 2002, in the District of

14   Connecticut, Caesar Batista  ^  ^  knowingly possessed with

15   intent to distribute and did distribute 100 grams or more of a

16   mixture and substance containing a detectable amount of

17   heroin, a Schedule I controlled substance.

18               With respect to that charge, and in particular with

19   respect to the lesser included offense in that charge of less

20   than 100 grams of heroin, a Schedule I controlled substance,

21   in violation of 841(a)(1) and 841(b)(1)(C), of Title 21 of the

22   United States Code, how do you plead?

23               THE DEFENDANT:  Guilty.

24               THE COURT:  Based on the answers given by the

25   defendant under oath and on the record and in the presence of
```

1    his counsel to the questions of the Court, based also upon the

2    remarks of the defense counsel and those of the assistant

3    United States attorney, it is the finding of this Court in the

4    case of the United States of America versus Eric Hooten that

5    the defendant is fully competent and capable of entering an

6    informed plea; that he understands the nature and consequences

7    of what he's doing by pleading guilty; that he understands the

8    charge against him; and that he's acting voluntarily,

9    knowingly and of his own free will, that he understands his

10   rights, and his plea of guilty is a knowing and voluntary plea

11   supported by a basis in fact.

12          The Court further finds that Mr. Hooten has entered

13   into the plea agreement voluntarily and knowingly.  The plea

14   is therefore accepted and the defendant is now adjudged

15   guilty, a finding of guilt shall enter forthwith.

16          The case is referred by the Court to the United

17   States Probation Office for a presentence investigation.

18          Obviously, Mr. Hooten is in custody, he was in

19   custody pretrial.  Is there any application with respect to

20   any alteration of that condition?

21          MR. PAETZOLD:  No, your Honor.

22          THE COURT:  All right then.  Cathy, you gave me some

23   dates but it was on the calendar for the 25th of February.

24   Are those dates still correct?

25          I need to advise counsel, the date that this would

1   fall on for sentencing under the calendar of the probation
2   office would be May 2nd.  I already have five sentencings set
3   on May 2nd so I would ask if there's any objection to
4   scheduling the sentencing on May 6th at 9:30 in the morning.
5             MR. PAETZOLD:  Your Honor, I don't have any
6   objection but I would like to discuss that.
7             THE COURT:  Please.  Obviously, I can do it on the
8   1st, if necessary.
9             (Mr. Paetzold conferring with the defendant.)
10            MR. PAETZOLD:  Your Honor, I'm looking at my
11   calendar and actually, May 6th, I have a trial tentatively
12   scheduled in Middletown state court.
13            THE COURT:  All right.
14            MR. PAETZOLD:  If at all possible --
15            THE COURT:  Do you want to do it on the 1st?
16            MR. PAETZOLD:  That would be better.
17            THE COURT:  Sure, we'll do it on the 1st.  I think
18   first disclosure is March 26th, ^first disclosure April 8th,
19   second disclosure is April 15.
20            Mr. Hooten, what I've just done is set scheduling in
21   this matter for May 1st at 3:30 and ordered a presentence
22   report.  In connection with the preparation of that report, a
23   part of it involves an interview of you.  If you would like to
24   have counsel with you during the interview, that's fine but I
25   would urge you to cooperate with the officer when he

1   interviews you and to answer his questions, obviously, but

2   also even to volunteer information that you think would be

3   helpful to me in connection with the sentencing in this

4   matter.

5              Basically, the probation officer's report is the way

6   I come to understand the facts and circumstances of the case,

7   of the charge against you, your background and your

8   circumstances and your criminal history.

9              THE DEFENDANT:  Okay.

10             THE COURT:  So any information you think that I

11  should know in that regard, you need to make sure the

12  probation officer's aware of it.  The report is so important

13  that when it's prepared, I don't see it initially.  It gets

14  given to your counsel and government's counsel first and

15  that's so you and your counsel can go over it carefully.  If

16  there are any mistakes in it or anything that you feel needs

17  to be included that hasn't been included, then you can tell

18  counsel that and he'll make sure that gets passed on to the

19  probation officer and that way it will get into the report.

20  Actually it gets to me in the final version.

21             Then on the day of sentencing, if there are any

22  issues of fact that come up in that report where you don't

23  think that what the officer's written is correct or government

24  disagrees with it, I need to resolve those issues before I

25  sentence you.  If we have to have a hearing, we would do that

1  but eventually I would decide what the facts were that

2  controlled or governed the sentencing and then I would

3  determine the guidelines based on those facts.

4          I wouldn't do that, though, until I heard from

5  Attorney Paetzold and Attorney Rubino, if the government

6  wished to be heard, and in addition, you have the right to

7  address the Court directly at the time of sentencing and if

8  you wish to do so, I would be pleased to hear from you that

9  day but that's your choice to make and you should probably

10  talk to counsel about what you feel comfortable with but

11  that's your choice as to whether you do or not.  Obviously,

12  counsel would speak on your behalf as well, all right?

13          THE DEFENDANT:  Okay.

14          THE COURT:  Do you have any questions now as to

15  what's going to happen going forward in connection with the

16  sentencing?

17          THE DEFENDANT:  No, ma'am.

18          THE COURT:  All right.  All right then.  I think

19  we've completed the matter on this, Mr. Hooten's proceeding,

20  and I think the marshal's already gone to get Mr. Batista.

21              (11:46 o'clock a.m.)
              COURT REPORTER'S TRANSCRIPT CERTIFICATE
22              I hereby certify that the within
          and foregoing is a true and correct transcript
23          taken from the proceedings in the above-entitled
          matter.

24

25                              _____
                              Official Court Reporter
   Dated: _____

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2                DISTRICT OF CONNECTICUT

 3
     *  *  *  *  *  *  *  *  *  * Criminal Docket
 4                                *    No. 3:02CR278(JCH)
     UNITED STATES OF AMERICA,    *
 5             Plaintiff          *
                                  * May 1, 2003
 6           vs.                  * 3:40 O'clock p.m.
                                  *
 7   ERIN HOOTEN,                 *
                    Defendant     *
 8                                *
     *  *  *  *  *  *  *  *  *  * Bridgeport, Connecticut
 9                     SENTENCING

10           BEFORE THE HONORABLE JANET C. HALL
                UNITED STATES DISTRICT JUDGE
11

12   Appearances:

13   For the Government:     JAMES FILAN, ESQ.
                             Assistant U.S. Attorney
14                           157 Church Street
                             New Haven, CT
15
     For the Defendant:      WILLIAM H. PAETZOLD, ESQ.
16                           Moriarty & Paetzold
                             140 Hebron Avenue
17                           Suite 102
                             Glastonbury, Connecticut
18
     For Probation:          JOSEPH MONTESSI, ESQ.
19                           U.S. Probation Officer

20

21   Court Reporter:         Thea Finkelstein RMR, CRR
                             915 Lafayette Boulevard
22                           Bridgeport, CT 06604
                             203) 384-6067
23

24   Proceedings recorded by mechanical stenography, transcript

25   produced by computer.
```

1    requires me to impose on you, and I know it's not easy.

2            But as I say, I hope that you can benefit from the

3    500-hour drug treatment program in the federal system.  It's a

4    very hard program, very difficult to be successful in it, but

5    if you are, I think it will help you greatly when you get out

6    and allow you to be able to live the kind of life I think you

7    want to live and haven't been able to.

8            So I wish you the best in dealing with the sentence

9    you do face and in the future, I hope that when you are on

10   supervised release, I won't have occasion to see you because

11   that means that you will be doing fine.

12           I do need to, at this time, advise you of certain

13   rights that you have.  You can appeal your conviction, if you

14   believe that the guilty plea you entered was somehow unlawful

15   or involuntary, somehow you were coerced into giving it or if

16   you in any way think there's some kind of defect or wrong in

17   the proceeding that wasn't waived by that guilty plea.

18           You also have a statutory right, right under the

19   law, to appeal your sentence in certain circumstances,

20   particularly if you think the sentence I've just imposed is

21   unlawful.

22           However, I believe under the plea agreement, that

23   you waived your right to appeal your sentence if the sentence

24   was less than 188 months, which of course it is.  So waivers

25   like that are generally enforceable and thus would mean you

1    would have no right to appeal the sentence.

2            However, if you think, again, for some reason, that

3    waiver is unenforceable or was obtained, you know, unlawfully,

4    then you can make that argument to the appellate court and

5    file an appeal.

6            Obviously, you have counsel who has been helping you

7    all along, but let's assume he didn't want to help you anymore

8    and you thought you might like to file an appeal or you wanted

9    to think about it.  You can file the appeal notice yourself.

10   It's a very simple piece of paper, just says I appeal, and say

11   what you appeal.  The clerk's office could help you and

12   although there's a filing fee with it, you can tell them you

13   can't afford it and they'll take it without the fee.

14           The important thing is that I need to be sure,

15   though, that you know if you want to file a notice of appeal,

16   you have to do that in the next ten days.  It only lasts a

17   very short period of time.  After the ten days, you lose the

18   right to appeal forever.  I have to be sure you understand

19   that if you did want to act, you have to act quickly.  You do?

20               THE DEFENDANT:  Yes.

21               THE COURT:  All right.  Is there anything further

22   that the Court needs to take up?  Were there any other counts

23   in the indictment or is that one of the other defendants?

24               MR. PAETZOLD:  The other defendants, your Honor.

25               THE COURT:  Fine.  Is there anything further?